THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY
*v.* THE PUBLIC UTILITIES COMMISSION

WYNNE, MURPHY, RYAN, DEVLIN and COVELLO, Js.

Argued June 5—decided July 29, 1957

*Louis Weinstein,* assistant attorney general, with whom, on the brief, were *John J. Bracken,* attorney general, and *John D. McHugh,* for the appellant. (defendant).

*Morris Tyler,* with whom were *John Lashnits* and, on the brief, *James W. Grady, Jr.,* for the appellee (plaintiff).

WYNNE, J. There is no dispute on the facts. By an application filed September 12, 1956, the plaintiff, a public service company, sought authority to issue 679,012 additional shares, of the par value of $25 each, of its authorized capital stock. Hearings were held by the public utilities commission on September 24, 25 and 26, 1956, at which the company offered evidence in support of its application. The only person appearing in opposition was a stockholder who objected only so far as the offering price per share exceeded the par value of the stock. The company proposed to offer the additional shares for subscription at $30 per share to stockholders of record in the ratio of one additional share for each

eight shares then outstanding. The company further proposed to dispose of any unsubscribed shares at not less than $30 per share. Transferable subscription warrants were to be issued to stockholders of record. Net proceeds to be received by the company from the sale of the additional stock were expected to approximate $20,275,000 and were to be applied, first, to the repayment of advances from the American Telephone and Telegraph Company of approximately $15,800,000. The balance of the net proceeds, approximately $4,475,000, was to be expended on the company's construction program.

Since 1946 the company has raised new capital by the sale of more than $100,000,000 of capital stock and $65,000,000 of debentures to pay for its large construction program, which was expected to continue at a high level through 1956 and 1957. The company estimated that for 1956 its gross capital expenditures would be about $49,000,000 and that for 1957 its construction program would comprise additions to telephone plant and property amounting to about $52,000,000. In addition to the amount raised from the proposed stock issue, further financing would be necessary to pay for the construction program. The commission on a number of occasions since 1945 has passed upon the issuance of additional equity and debt securities by the company, the proceeds of which have been used to finance plant expansion and improvements to meet the continuing demand for more and better telephone service. Since 1945, the annual gross revenues of the company have increased by $51,545,500, from $37,284,500 in 1946 to $88,830,000 in 1955. In the same period the number of telephones in service increased from 588,604 in 1946 to 1,000,464 in 1955. The company's gross investment in telephone plant

and property has grown from $123,171,000 in 1946 to $313,285,000 as of December 31, 1955, an increase of $190,114,000. The gross book cost of telephone plant as of August 31, 1956, was approximately $338,347,000.

The commission found that the purpose for which proceeds from the issue and sale of additional common stock were sought is in the public interest. It expressed concern, however, about the proposed offering price of $30 per share and issued the following order: "Now, therefore, it is ordered, that the application for the Company to issue and sell 679,012 shares of capital stock upon the terms set forth in the application should be and it hereby is approved, with the exception that the offering price of $30 per share is disapproved, and, [i]t is ordered further, that The Southern New England Telephone Company should be and it hereby is authorized to issue and sell 679,012 shares of its capital stock of the par value of $25 upon the terms and conditions set forth in the application . . . at a subscription price of not less than $32 per share, and to sell any unsubscribed shares at a price not less than the subscription price per share of $32 herein authorized . . . ."

From this order the company appealed to the Superior Court, which sustained the appeal. The commission has appealed from the judgment of the Superior Court. The question before us is whether the commission, having found that the purpose of the issue and sale of the additional common stock is in the public interest and having approved, with the exception noted, the application and authorized the issuance of the stock upon the terms and conditions set forth in the application, is empowered under Connecticut statutes to direct the change of the offering price from $30 per share to $32 per share.

The issuance of securities by public service companies is governed by General Statutes, § 5433, the pertinent part of which reads as follows: "No public service company, without having first obtained the approval of the commission, shall . . . (2) issue any . . . securities of any nature . . . . The commission shall approve or disapprove each such issue within thirty days after the filing of a written application for such approval. If not disapproved within said thirty days, such issue shall be deemed to be approved. The commission shall not require a company to issue its common stock under terms or conditions not required by the general statutes."

The company claims that this statute expressly prohibits the commission from imposing, in its order, any conditions as to the offering price of the stock. The commission takes the position that since, pursuant to the provisions of § 5433, no public service company may issue any securities of any nature without having first obtained the approval of the commission, jurisdiction to approve an issue necessarily implies jurisdiction to approve its terms. The commission points out that for every dollar of increase in the offering price of this issue of common shares, there will result an additional $679,012 of new money at no additional cost to the company, providing the market price of the company's shares remains within reasonable bounds and does not reach a point at which existing, or new, investors refuse to purchase the issue; and that the issuance of the stock at a price of $32 per share would enable the company to raise an additional $1,358,024 of new money which will inure to the benefit of the investors and the ratepayers, inasmuch as the new financing required by the company in the future will be reduced by that amount.

The determination of the rights of the parties requires a construction of § 5433 and particularly that sentence which reads: "The commission shall not require a company to issue its common stock under terms or conditions not required by the general statutes." The trial court took the position that this language places a limitation on the powers of the commission as to the issuance of common stock by a public service company and that unless the statute law requires terms and conditions related to the issuance of common stock the commission has no power to make its own terms or conditions in that respect. In brief and argument before this court no statute has been cited which requires the par value stock of any corporation to be issued at a price in excess of par. The commission argues that the offering price per share does not constitute a term or condition of issue within the meaning of § 5433, but it cites no case in support of its position.

In its brief the commission does not claim that the prohibitory language of § 5433 should be ignored. It does urge that this sentence should be read in the light of the express powers of the commission to exercise its expert judgment in approving or disapproving a proposed issue and that the expression "terms or conditions" should not be given a construction which would hamstring the liberal powers of the commission. It cites General Statutes, § 5401, the pertinent portion of which reads as follows: "The general purposes of this section and [§ 5433] are to assure to the state of Connecticut its full powers to regulate its public service corporations, to increase the powers of the public utilities commission and to promote local control of the public service corporations of this state, and said sections shall be so construed as to effectuate these purposes."

The word "terms" includes price. *Williamson* v. *Illinois Cent. R. Co.,* 190 Ind. 239, 248, 128 N.E. 758. The word "terms" means time and amounts of payment. *Nakdimen* v. *Fort Smith & Van Buren Bridge District,* 115 Ark. 194, 208, 172 S.W. 272; *City of Clovis* v. *Southwestern Public Service Co.,* 49 N.M. 270, 282, 161 P.2d 878; see *Shawmut Assn.* v. *Securities & Exchange Commission,* 146 F.2d 791, 795; *Paul* v. *Grimm,* 165 Pa. 139, 148, 30 A. 721. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 8890. "Terms" means "conditions; as, the *terms* of a sale; hence, specif.: stipulations regarding payment, price or wages." Webster's New International Dictionary (2d Ed.). "Condition" means "[t]hat which limits or modifies the existence or character of something; . . . a restriction or qualification." Id. "The words of a legislative enactment . . . are to be interpreted in their natural and usual meaning unless the context indicates that a different meaning was intended." *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 114, 90 A.2d 862. We are satisfied that the legislature employed the words "terms or conditions" in the sense in which they are ordinarily used and that the subscription price to be paid by the stockholders under their pre-emptive rights and by others who purchase the stock is included in the phrase "terms or conditions." Since there is no general statute which requires the par value stock of any corporation to be issued at a price in excess of par, the order of the commission falls within the express prohibition of § 5433.

As further reason in support of its position, the company cites § 2580d of the 1955 Cumulative Supplement, enacted by the legislature in 1955. This

statute concerns pre-emptive rights of stockholders of any corporation organized under the general or special laws of this state. It grants to each such stockholder, with certain exceptions of no moment here, the right "to purchase his pro rata proportion of [capital stock issued] at such price, within such time and on such terms as shall be fixed by the board of directors." Public utility corporations and their stockholders are not excepted. This legislation is certainly not consistent with the claim of the commission that it is empowered to fix the price and terms upon which stockholders of the plaintiff company may exercise their pre-emptive rights. "The General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." *State* v. *Staub,* 61 Conn. 553, 566, 23 A. 924; *Hartley* v. *Vitiello,* 113 Conn. 74, 82, 154 A. 255; *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70.

The commission argues that the statute should be construed liberally and cites the following: "[T]he modern and certainly the better trend is that statutes granting powers to administrative agencies should receive a reasonable interpretation, and where the statute has as its aim a system of public regulation that can be administered efficiently and properly only by a group of qualified experts a liberal interpretation to effectuate the purposes and objectives of the statute should be preferred." 3 Sutherland, Statutory Construction (3d Ed.) p. 288. It is also true, however, that in all its proceedings the regulatory body must act strictly within its statutory authority, within constitutional limitations, and in a lawful manner. *State ex rel. Pacific*

*Telephone & Telegraph Co.* v. *Department of Public Service,* 19 Wash. 2d 200, 215, 142 P.2d 498.

The question before this court is whether the commission has acted illegally or has exceeded or abused its powers or acted arbitrarily. *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 550, 12 A.2d 775; *Coppola* v. *New York, N.H. & H.R. Co.,* 143 Conn. 109, 112, 119 A.2d 730. The commission, having approved the application of the company in all respects except the issuing price of the stock, clearly exceeded its authority in directing in its order the price at which the stock should be issued.

In its judgment the Superior Court sustained the appeal and remanded the case to the commission with the direction to delete from its order "that portion ordering the subscription price to be not less than $32.00 per share." While this can be construed as being tantamount to directing the commission to approve the application, it requires some clarification. The court was correct in sustaining the appeal, and since upon the record the only reasonable conclusion is that the company was entitled to have its application approved, the commission should have been directed to approve it. *Executive Television Corporation* v. *Zoning Board of Appeals,* 138 Conn. 452, 457, 85 A.2d 904.

There is error in the form of the judgment, it is set aside and the court is directed to render judgment sustaining the appeal and remanding the case to the commission with direction to approve the application of the plaintiff.

In this opinion the other judges concurred.