CONNECTICUT THEATER FOUNDATION, INC. *v.*
F. GEORGE BROWN, TAX COMMISSIONER
OF THE STATE OF CONNECTICUT

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 9, 1979—decision released February 26, 1980

*Robert L. Klein,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the appellant (defendant).

*William B. Rush,* with whom were *Christopher R. Loomis* and, on the brief, *W. Parker Seeley,* for the appellee (plaintiff).

PARSKEY, J. In 1973, the plaintiff, a nonstock, nonprofit Connecticut corporation, commenced operation of the Westport Country Playhouse, a summer theater. Shortly after the beginning of its 1973 season the plaintiff applied to the Connecticut tax department for an exemption from the admissions tax imposed under chapter 225 of the General Stat-

utes. It also applied to the Internal Revenue Service (IRS) for exemption from the federal income tax. In April, 1974, the IRS granted the plaintiff the requested exemption effective "from the date of its inception," which covered the commencement of the plaintiff's business in 1973. In June, 1974, the state tax department issued the plaintiff an exemption certificate for future admissions tax liability, but precluded application of the exemption to the audit period of June through September, 1973. The tax commissioner later issued a deficiency assessment against the plaintiff for the admissions tax allegedly due on the receipts collected by the plaintiff during the 1973 audit period. The plaintiff appealed the commissioner's decision to the Court of Common Pleas. After trial on a stipulation of facts the court set aside the deficiency assessment.

General Statutes § 12-541 (a) imposes a tax of 10 percent of the admission charge to any place of amusement, entertainment or recreation. The plaintiff admits that it is a taxable entity within the definition of subsection (a) of the statute, but contends that it qualifies for exemption under the provisions of subsection (b) which exclude organizations exempt from federal income taxes.[1]

The plaintiff argues that it qualified as a tax exempt organization during the 1973 audit period because the subsequent IRS determination of its

---

[1] "[General Statutes] Sec. 12-541. AMUSEMENT TAX. NATURE OF TAX. EXEMPTIONS. . . . (b) No tax shall be imposed under subsection (a) of this section with respect to admission charges all the proceeds of which inure exclusively to (1) organizations exempt from income taxes under the United States Internal Revenue Code; or (2) in the absence of a ruling by the Internal Revenue Service, organizations determined by the commissioner of revenue services to be of a similar nature."

exempt status was made retroactive to the commencement of its operations. The plaintiff's argument ignores both the character of the admissions tax and the statutory provisions concerning when the tax is due and payable. The admissions tax is a transaction tax. The taxable event is the admission charge to the patron. At that point the tax is imposed on the person making the charge, giving that person the right of reimbursement from the purchaser. Section 12-547 clearly provides that the admissions tax must be computed and paid in the month following that in which it was collected. For an exemption to operate so as to relieve the taxpayer of liability it must therefore exist at the time the tax is to be collected from the patron. Absent such exemption the taxpayer acts as the agent of the state when it collects the tax from its patrons. It is stipulated that at the time of the admissions in question and for several months thereafter the plaintiff was not exempt under § 12-541 (b) because it was neither an organization exempt for federal income tax purposes nor an organization determined by the commissioner of revenue services to be of a similar nature. The plaintiff did not qualify for the § 12-541 (b) (1) exemption until the IRS made a determination of its taxable status some seven months after the taxable period in question. During the 1973 summer season the admission charges that the plaintiff received were not exempt from the admissions tax and the plaintiff was therefore required to pay that tax when due.

An additional factor in favor of imposing the admissions tax here is that the plaintiff actually did collect the amount of this tax from its patrons during this period. Although the trial court con-

cluded in its memorandum of decision and its limited finding that the price of each ticket "was a flat $2.50 and was not contingent on a finding of taxability," this conclusion is at odds with the stipulated and admitted facts. It was stipulated that each ticket sold bore the following legend: "In the event the excise tax is repealed the amount shown as tax will become a part of the established price." This language clearly indicates that a portion of the revenue collected was designated as tax should the tax be deemed applicable. The plaintiff confirms this fact by the admission in its brief that it "collected an amount equal to the tax possibly due."

Although the conditional language of the ticket legend is inartfully drafted, it may reasonably be interpreted to mean that the portion of the ticket revenue designated as tax would become part of the price in the event that the tax is inapplicable. Because we have concluded on the basis of strict statutory interpretation that the admissions tax did in fact apply to these receipts, then that designated portion of the revenue was collected *as a tax* and should rightfully be turned over to the state.

The plaintiff argues that to permit the state to collect the tax in this instance would frustrate the legislative policy expressed in § 12-541 (b) to exempt certain qualifying organizations, such as the plaintiff, from the imposition of the tax, because in effect this gives the state a free tax bite pending the determination of the organization's exemption status. While this argument does have a certain appeal, nevertheless the legislative intent must be ascertained from the language of the statute itself if the language is plain and unambiguous. *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976). Fur-

ther, the statute is to be construed as a whole and so as to reconcile all parts as far as possible. *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 621, 363 A.2d 1038 (1975). When the provisions of chapter 225 are interpreted as a whole, they unambiguously provide that, in the absence of an exemption, the admissions tax is imposed at the time the admission charge is collected. Statutes which exempt from taxation are to be strictly construed against the party claiming an exemption. *Crescent Beach Assn.* v. *East Lyme,* 170 Conn. 66, 71, 363 A.2d 1045 (1976). If we strictly construe the § 12-541 (b) (1) exemption provision, the plaintiff did not come within its protection at the time it collected the tax from its patrons or at the time the tax became statutorily due, since the plaintiff's application for IRS exemption was still pending. The statute specifically provides for such a contingency with the subsection (b) (2) alternative of securing a determination by the commissioner of revenue services. General Statutes § 12-541 (b) (2). The plaintiff's application in this respect was likewise pending at the time this tax fell due. Thus, the plaintiff not having satisfied the statutory requirements for exemption, it could not avail itself of the specific exemptions authorized by law. *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 609, 362 A.2d 847 (1975). On the basis of a plain reading of the statute we must assume that it was not the intention of the legislature to exclude such an organization from taxation under these circumstances.

We comment briefly on the plaintiff's further argument that the tax commissioner was dilatory in performing his statutory duty to determine the plaintiff's tax status and that therefore the plaintiff

should not be denied retroactive application of its status as a tax exempt organization. The short answer to this argument is that the record does not support the plaintiff's claim. For a number of years prior to 1973, the Westport Country Playhouse had been operated by Producing Managers Connecticut Company ("Managers"), a stock corporation operated for profit. Managers was not only subject to the admissions tax, but had in fact collected and paid such tax for its operation of the Playhouse from 1969 through 1972. In 1973, Managers was engaged by the plaintiff to act as producing manager for the twelve plays presented by the plaintiff at the Playhouse during the 1973 season. With these facts before him the tax commissioner cannot be faulted for spending the necessary time to investigate the financial relationship between Managers and the plaintiff so as to satisfy himself that the arrangement between the two was not merely a symbiotic relationship designed to avoid the admissions tax.

There is error, the judgment is set aside and the case is remanded to the Superior Court[2] with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.

---

[2] See General Statutes § 51-164s.