LUNDY ELECTRONICS AND SYSTEMS, INC. *v.*
CONNECTICUT STATE TAX COMMISSIONER
(10534)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued January 10—decision released April 12, 1983

*Ralph G. Murphy,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Richard K. Greenberg,* assistant attorney general, for the appellant (defendant).

*Matthew B. Woods,* with whom, on the brief, was *Louis I. Gladstone,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The plaintiff in this case, Lundy Electronics and Systems, Inc. (Lundy), is a foreign corporation. At the time that this action was instituted, it was also the owner of certain personal property[1] which was placed in the Hartford National Bank in the city of Hartford. This property was exempt from local personal property taxes pursuant to General Statutes § 12-121a.[2] On January 9, 1975, the tax assessor for the city of Hartford advised Lundy by letter that a penalty assessment was being levied against it for failing to file a listing of exempt personal property as required by General Statutes § 12-121b. Subsequent to this letter, on January 24, 1975, Lundy did file the proper forms. The tax assessor, however, refused to cancel the penalty and so notified Lundy on February 11, 1975. Lundy appealed this decision on the penalty to the state tax commissioner (tax commissioner), which appeal was denied. Thereafter, Lundy appealed to the Superior Court. On

[1] The property consisted of certain computers with an assessed value of $237,500.

[2] General Statutes §§ 12-121a through 12-121d have since been repealed by Public Acts 1975, No. 75-213, § 50, effective May 12, 1975.

November 18, 1980, the court, *Corrigan, J.*, rendered a decision sustaining Lundy's appeal. This appeal followed.

Lundy claims that General Statutes § 12-121b[3] requires the assessors in each municipality to provide property owners with effective notice of the information that they are required to file prior to assessing any penalties. Failure to provide adequate notice in such circumstances would, according to Lundy, violate the constitutional principles of due process and equal protection. Furthermore, it claims that the tax assessor for the city of Hart-

---

[3] General Statutes § 12-121b, entitled "Submission of lists of property not subject to assessment," provides: "The assessors in each municipality shall on or before the fifteenth day before the 1974 assessment date of such municipality, and annually thereafter, post on the sign posts therein, or publish in a newspaper published in such municipality or, if no newspaper is published therein, then in any newspaper published in the state and having a general circulation in such municipality, a notice requiring all persons therein who would have been liable to pay taxes on personal property acquired by them after the 1973 assessment date of such municipality except for the provisions of section 12-121a, to bring in written or printed lists of such property, belonging to them on the first assessment date following such notice, on or before the first day of the month following said assessment date. Such list shall be dated and signed under penalty of false statement and shall be on a form approved by the state tax commissioner and furnished by said assessors. Each such list shall include, with respect to each item of such property, the nature, cost, acquisition date and fair market value, determined by application of the rate of depreciation allowed by said assessors under the method and schedule of depreciation applicable with respect to such property or similar property in the 1972 assessment year in the tax jurisdiction in which such property is located. After 1974, each such list shall also include, with appropriate designation, in addition to all new acquisitions, those items of such property no longer owned by the person submitting such list but which appeared on such person's list in the previous year. Any person who fails to file such list as herein provided shall be subject to a penalty assessment equal to the amount derived by multiplying the fair market value of the property required to be listed, as determined by the assessors, by the tax rate of such municipality for the year next preceeding."

ford failed to comply with the provisions of General Statutes § 12-43. That statute, entitled "Property of nonresidents," provides, in pertinent part, that "[a]ll owners of real estate, or of tangible personal property located in any town more than seven months during the year, who are nonresidents of such town, shall file lists of such real estate and personal property with the assessors of the town in which the same is located under the same provisions as apply to residents, and such personal property shall not be liable to taxation in any other town in this state. The list of each nonresident taxpayer shall contain his post-office and street address. *The assessors shall mail to each nonresident,* or to his attorney or agent having custody of his taxable property, at least fifteen days before the expiration of the time for filing lists, blank *forms for filing lists* of such property." (Emphasis added.) Although not cited in Lundy's brief, General Statutes § 12-121b also has a provision requiring lists to be "on a form approved by the state tax commissioner and furnished by said assessors." By admission, the local tax assessor provided no list to Lundy within the time provided. This failure, according to Lundy, "is a fatal defect as to the attempt of the municipality to impose a penalty assessment." Therefore, it submits that the Superior Court's judgment should be affirmed.

The tax commissioner has raised three claims. First, he asserts that he had no jurisdiction to review Lundy's claim regarding the propriety of the penalty pursuant to General Statutes § 12-121d. That statute provides as follows: "If, in the process of verification for purposes of assessment under section 12-121c, the local assessor finds an owner's report to be unacceptable for any reason,

he shall notify said owner, in writing, within sixty days following the assessment date, including in such notification, details as to why said report is not acceptable. The taxpayer may request a hearing before such assessor not later than thirty days following the receipt of such notice, and said taxpayer shall have the right to appeal to the state tax commissioner for a hearing not later than six months following the assessment date. The decision of said commissioner based on such hearing shall be binding, subject to the right of said taxpayer to appeal to the court of common pleas within sixty days of receipt of notice of said decision." In regard to the merits of Lundy's claim, the tax commissioner contends that Lundy had sufficient notice to satisfy constitutional standards citing, inter alia, *Texaco, Inc.* v. *Short,* 454 U.S. 516, 102 S. Ct. 781, 70 L. Ed. 2d 738 (1982). The tax commissioner also claims that the local assessor was relieved of the burden of providing the necessary filing forms because Lundy had not previously submitted its name and address to the assessor's office.

We agree with the tax commissioner's claim that he was without jurisdiction under the statute to grant the relief sought by Lundy and, therefore, we hold that the Superior Court erred in not dismissing Lundy's appeal. Because of this holding, we do not reach the merits of this appeal.

The tax commissioner " 'must act strictly within [his] statutory authority, within constitutional limitations, and in a lawful manner.' " *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 604, 362 A.2d 847 (1975), quoting *Southern New England Telephone Co.* v. *Public Utilities Commission,* 144 Conn. 516, 523, 134 A.2d 351 (1957); see also *Page* v. *Welfare Commissioner,* 170 Conn. 258,

262, 365 A.2d 1118 (1976); *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971); cf. *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 93–94, 291 A.2d 721 (1971). In like manner, " '[n]o administrative or regulatory body can modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power.' " *Fusco-Amatruda Co.* v. *Tax Commissioner, supra,* quoting *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5 (1964); see also *Waterbury* v. *Commission on Human Rights & Opportunities, supra,* and cases cited therein. In the present case, the tax commissioner's grant of authority is to be found in General Statutes § 12-121d as set out above. Our task is to determine whether, pursuant to that grant of authority, the tax commissioner is authorized to review the levying of a penalty assessment on a taxpayer who is late in filing the forms required by General Statutes § 12-121b. "As is true in every case involving the construction of a statute, our starting point must be the language employed by the legislature." *Verdon* v. *Transamerica Ins. Co.,* 187 Conn. 363, 366, 446 A.2d 3 (1982). General Statutes § 12-121d does not explicitly delineate the scope of any hearing before the commissioner. Rather, it merely states the "taxpayer may request a hearing before such assessor . . . and said taxpayer shall have the right to appeal to the state tax commissioner for a hearing." We must therefore look to the statute as a whole in order to determine the tax commissioner's statutory grant of authority. *Verrastro* v. *Sivertsen,* 188 Conn. 213, 222, 448 A.2d 1344 (1982); see also *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 676–77, 427 A.2d 863

(1980); *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979).

General Statutes § 12-121d provides, in part, that "[i]f, in the process of verification for purposes of assessment under § 12-121c, the local assessor finds an owner's report to be unacceptable for any reason, he shall notify said owner . . . as to why said report is not acceptable." Lundy fixes upon the words "unacceptable for any reason" as providing the assessor with the authority to consider claims based upon the lack of statutory notice.[4] The problem with this position is that it would require us to interpret these words in isolation from the rest of the statute. We have noted that words which are seemingly clear and unambiguous may be modified by the context in which they are found. *Doe* v. *Institute of Living,* 175 Conn. 49, 57, 392 A.2d 491 (1978); *Mitchell* v. *King,* 169 Conn. 140, 144, 363 A.2d 68 (1975).

In the present case, a local assessor's authority to consider a problem raised by a taxpayer is limited by General Statutes § 12-121d to those claims that arise "in the process of verification for purposes of assessment under [General Statutes] section 12-121c." The legislative history of the statute provides no assistance in determining the parameters of what is included in the "process of verification." We must interpret these terms, therefore, according to their "commonly approved usage." General Statutes § 1-1a; *Doe* v. *Institute of Living,* supra. The word "verification" has been defined as

---

[4] It argues that the appeal provisions of the statute are "sufficiently broad to enable the state tax commissioner to decide any [appeal by the taxpayer] under the statute, including a claim of lack of statutory notice."

"the authentication of truth or accuracy by such means as facts, statements, citations, measurements, or attendant circumstances." Webster's Third New International Dictionary. The assessment procedure under General Statutes § 12-121c requires an assessor to "submit to the state tax commissioner . . . a list of the owners, together with an itemized statement of each such owner's acquisitions of personal property, showing the fair market value thereof." The verification process, therefore, requires an assessor to "authenticate" the list of owners, the extent of their property holdings, and the value of those holdings. It follows from this that under § 12-121d, a report can be "unacceptable for any reason" only if arising from *these categories.* Therefore, we cannot accept Lundy's claimed interpretation of the words "unacceptable for any reason."

In so concluding, we note that the date on which forms are provided to a taxpayer, or the date on which the taxpayer files those forms is outside of the verification process. To hold otherwise would render insignificant that section of the statute providing, "[i]f, in the process of verification for purposes of assessment under section 12-121c." It is well recognized that " 'a statute should be construed so that no word, phrase or clause will be rendered meaningless.' " *Verrastro* v. *Sivertsen,* supra, 221, quoting *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 122, 434 A.2d 949 (1980) (Citations omitted); see *Doe* v. *Institute of Living,* supra, 58, and cases cited therein. Rather, " 'there is a presumption of purpose behind every sentence, clause or phrase.' " *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978), quoting *Doe* v. *Institute of Living,* supra. See also *Winchester* v. *Connecticut*

*State Board of Labor Relations,* 175 Conn. 349, 356, 402 A.2d 332 (1978) ; *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). If we were to adhere to the position set out by Lundy, the statute could have simply read, "[i]f the assessor finds an owner's report to be unacceptable for any reason," with no reference at all to the legislative language that "unacceptable for any reason" is expressly referrant to "[i]f, in the process of verification for purposes of assessment under section 12-121c." In construing a statute, " 'the question before a court . . . is not what the legislature actually intended but what intention it expressed by the words that it used.' " *Verrastro* v. *Sivertsen,* supra, 220, quoting *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980) ; see also *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 98, 291 A.2d 721 (1971). "If" means "in the event that, in case." Webster's Third New International Dictionary. Thus, the phrase "unacceptable for any reason" clearly refers to the "verification" referred to in the statute.

The tax commissioner had the authority under § 12-121d to review only the local assessor's decision finding "an owner's report . . . unacceptable" where such a report is "in the process of verification for the purposes of assessment under section 12-121c." It follows that if the assessor did not have authority to review a claim within this limitation, then the commissioner had no authority to review it. In other words, the tax commissioner's authority under § 12-121d extends only to reviewing an assessor's action in finding an owner's report "unacceptable for any reason" arising explicitly "in the process of verification . . . under section

12-121c." We, therefore, cannot accept the position advocated by Lundy and we hold that the tax commissioner did not have authority to review Lundy's claim.[5] It follows from this holding that the Superior Court did not have jurisdiction to hear and determine this action. See *Groton* v. *Commission on Human Rights & Opportunities,* 169 Conn. 89, 101, 362 A.2d 1359 (1975); *Crouchley* v. *Pambianchi,* 149 Conn. 512, 515, 182 A.2d 11 (1962). The trial court, therefore, should have dismissed the appeal.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the action for lack of jurisdiction.

In this opinion SPEZIALE, C. J., PETERS and PARSKEY, Js., concurred.

SHEA, J. (dissenting and concurring). I disagree with the remand for dismissal of the appeal for lack of jurisdiction. I would find error in the judgment sustaining the appeal and direct a dismissal on the merits.

My disagreement is with the interpretation given to General Statutes § 12-121d as precluding an appeal where a penalty has been assessed under General Statutes § 12-121b for failure of the owner to file a list of personal property within the time limit established by that statute. Although § 12-121d refers to "in the process of verification for purposes of assessment under section 12-121c" as the occasion for finding an owner's report to be "unacceptable," it is inconsistent with the broad

---

[5] Because of the limited issues raised by this appeal, we need not discuss alternative avenues of relief which may have been available to Lundy.

language, "unacceptable for any reason," to exclude a failure to file on time from the scope of the appeal provision.

In any event, a failure to file any return at all as well as an omission of certain property from a list which has been filed, either of which events would subject the owner to a penalty assessment under § 12-121b, would qualify under the "verification" limitation of the grounds for unacceptability which this opinion imposes. The "process of verification" under § 12-121c, which is referred to in § 12-121d, is the duty of checking the accuracy of the list to be submitted to the tax commissioner of the owners, their personal property and the values thereof, "which would have been submitted to the local assessor for property tax purposes except for the application of section 12-121a."[1]  In order to prepare such a list the assessors would have to verify (1) whether the owners who had submitted lists required under § 12-121b had included all taxable personal property and supplied the information required by the statute and (2) whether some owners who were obliged to file lists had failed to do so.  Apparently it was "in the process of" this second kind of verification that the Hartford assessor discovered the presence of the two business machines owned by the plaintiff and situated at the Hartford National Bank.  The consequences of that discovery, of course, resulted in the penalty tax.

---

[1] The majority opinion appears to recognize this proposition: "The verification process, therefore, requires an assessor to 'authenticate' the list of owners, the extent of their property holdings, and the value of those holdings."  To say, however, as the opinion does, that "the date that the taxpayer files those forms is outside the verification process" overlooks the fact that the penalty imposed under § 12-121b results from the failure of the owner to file his property list by the date specified, a situation which the "verification process" was designed to discover.

I see no distinction between the first type of verification (i.e., checking the lists which have been filed) and the second type (i.e., checking to see whether a list has been filed for certain items of taxable property) so far as the availability of an appeal under § 12-121d is concerned. Nothing in the language of the statutes justifies such a distinction and it is difficult to see why the legislature would have intended to allow an appeal in the first situation and not in the second.

On the merits, I would reject the position of the trial court that the failure of the assessor to mail out the forms as provided in General Statutes § 12-43 excuses the failure of the taxpayer to file the required list by the November 1 deadline. The argument of the plaintiff that unless the assessors first sent the forms it would not have notice of the filing requirement established by § 12-43 disregards the familiar principle that every person, even a nonresident, is presumed to know the law. The plaintiff knew that its property was situated in Hartford and it was bound to observe all requirements of law which pertained thereto whether or not it had actual knowledge of them.