CONNECTICUT PERFORMING ARTS
FOUNDATION, INC.,
Plaintiff-Appellant,

v.

Hon. George F. BROWN, Tax Commissioner of the State of Connecticut,
Defendant-Appellee.

No. 299, Docket 85–5009.

United States Court of Appeals,
Second Circuit.

Argued Oct. 16, 1985.

Decided Sept. 5, 1986.

Robert M. Wechsler, Stamford, Conn. (Michael Jon Barbarula, of counsel), for plaintiff-appellant.

Richard Greenberg, Asst. Atty. Gen. of State of Conn., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen. for State of Conn., of counsel), for defendant-appellee.

Before FRIENDLY *, KAUFMAN, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This action began in 1975 when plaintiff, the Connecticut Performing Arts Foundation ("CPAF"), sued in the Connecticut Court of Common Pleas to appeal the defendant tax commissioner's revocation of its exemption from the state's admissions tax. In November 1981, shortly after filing a bankruptcy petition under Chapter 11 of the Bankruptcy Code, CPAF removed the action to the bankruptcy court, which held that the commissioner had improperly revoked CPAF's exemption. The state appealed that ruling to the district court, 47 B.R. 911, which reversed, and this appeal followed. On March 10, 1986, we certified the determinative questions of law to the Connecticut Supreme Court. The opportunity to resolve the controlling question of state law having been rejected without comment, the matter is left for our resolution.

---

* Judge Friendly participated in the panel's decision to certify certain questions on this appeal to the Connecticut Supreme Court. In light of his death on March 11, 1986, Judges Kaufman and Pratt are now deciding this appeal in accordance with § 0.14(b) of the rules of this court.

## BACKGROUND

CPAF is a nonprofit Connecticut corporation organized for the purpose of promoting the performing arts in Connecticut, primarily through the operation of a summer theater. In 1962, CPAF applied to the Internal Revenue Service ("IRS") for an income tax exemption under section 501(c)(3) of the Internal Revenue Code. 26 U.S.C. § 501(c)(3). For some reason unexplained in this record, CPAF subsequently requested that the IRS consider its eligibility for an exemption under § 501(c)(4), rather than under § 501(c)(3). The IRS denied the exemption, finding that "the manner in which [CPAF had] operated is substantially similar to that of a commercial undertaking so as to preclude exemption under section 501(c)(4)."

The admissions tax at issue in this appeal, Conn.Gen.Stat. § 12–541 (the "new tax"), was enacted in July 1971 to replace Conn.Gen.Stat. § 12–526 (1969) (the "old tax"), which provided for exemptions simply by listing types of excluded organizations. The new tax, which itself has since been repealed, provided at all relevant times that

(a) There is hereby imposed a tax of ten per cent of the admission charged to any place of amusement, entertainment or recreation * * *. The tax shall be imposed upon the person making such charge and reimbursement for the tax shall. be collected by such person from the purchaser. * * *

(b) No tax shall be imposed under subsection (a) of this section with respect to admission charges all the proceeds of which inure exclusively to (1) organizations exempt from income taxes under the United States Internal Revenue Code or (2) in the absence of a ruling by the Internal Revenue Service, organizations determined by the commissioner of revenue services to be of a similar nature.

Conn.Gen.Stat. § 12–541.

On April 27, 1971, prior to the passage of the new tax, representatives of the Connecticut Tax Department conducted a hearing regarding CPAF's application for exemption from both the old tax and the proposed new tax. The district court found that at that hearing CPAF disclosed the IRS's 1962 denial of CPAF's claimed income tax exemption under § 501(c)(4). CPAF urged that it nevertheless qualified for an exemption from the proposed new tax because it was of a "similar nature" to organizations eligible for exemptions under § 501(c)(3).

CPAF renewed its exemption application after Connecticut adopted the new admissions tax, and additional hearings were held in September 1971. In April 1972 the tax commissioner ruled that CPAF qualified as a "similar nature" organization, with the exemption "to remain in force as long as the operations of the Connecticut Performing Arts remains [sic] unchanged."

Only one year later, however, the tax commissioner notified CPAF that its exemption would expire at the end of the year unless CPAF obtained a ruling from the IRS that it qualified for a federal tax exemption. CPAF contested this action at a hearing in December 1973. In January 1974 the commissioner revoked CPAF's exemption because "subsequent investigation by the department revealed that the organization was denied an exemption from the federal income tax on March 9, 1962." The commissioner then assessed taxes against CPAF in accordance with that revocation. In December 1974, after a rehearing, the tax commissioner reaffirmed the revocation, finding that in light of the "new information" about the denial of CPAF's 1962 application for a federal income tax exemption, the ruling made in 1971 [granting the exemption] was "invalid." Under protest, CPAF paid over one million dollars in taxes.

The bankruptcy court found that the commissioner had been aware of the 1962 IRS ruling when he originally granted CPAF's exemption and, therefore, the court reasoned that there was no "new information" to justify the revocation. The bankruptcy court therefore reversed the commissioner's ruling and ordered a refund of all admissions taxes paid by CPAF, with-

out prejudice to the tax commissioner's ability to conduct hearings and issue rulings which "prospectively affect CPAF's tax exempt status."

On appeal of the bankruptcy court ruling, the district court interpreted § 12–541(b)(2)—which allows an exemption for "similar nature" organizations "in the absence of a ruling by the Internal Revenue Service"—to mean that "the commissioner only had authority to grant an exemption if there had been either a favorable ruling by the IRS or no IRS ruling whatsoever." The district court therefore concluded that the commissioner was without authority to issue an admissions tax exemption in 1972 and that it was thus "incumbent upon the commissioner to revoke that exemption when he became aware of his error." The district court further concluded that even if the bankruptcy court had correctly determined that the revocation was improper, the bankruptcy court's remedy, ordering repayment to CPAF of taxes paid, was itself improper.

CPAF appealed, and, on March 10, 1986, pursuant to the Uniform Certification of Questions of Law Act, 1985 Conn.Pub.Acts 85–111, we certified the following questions of law to the Connecticut Supreme Court:

A. Under Connecticut General Statute § 12–541(b)(2), enacted as Public Act 71–837 in 1971 and since repealed, did the tax commissioner for the State of Connecticut have discretion to grant an exemption from the Connecticut admissions tax to appellant CPAF, an organization claiming to be of a similar nature to organizations exempt from federal income taxation under 26 U.S.C. § 501(c)(3), when the Internal Revenue Service had previously, in 1962, denied CPAF's application, made under 26 U.S.C. § 501(c)(4), for exemption from federal income taxes?

B. Under the law of Connecticut, may appellant CPAF recover for itself admissions taxes collected from its patrons and paid to the State of Connecticut after December 31, 1973, the date upon which

the tax commissioner for the State of Connecticut had notified appellant that its exemption from the admissions tax would be revoked, when it had included on the back of all tickets issued during this period a legend stating that, if the exemption were subsequently granted, the amount of the tax would be added to the admission charge?

Although resolution of these questions of Connecticut law by the Connecticut Supreme Court would appear to have been in the interest of judicial economy, the supreme court denied certification without comment. Left without guidance from the state on this question of state law portending serious consequences for a significant cultural institution in the State of Connecticut, we must now, for better or for worse, address the commissioner's revocation of CPAF's exemption.

## DISCUSSION

Section 12–541(b) provided that no tax shall be imposed with respect to admission charges, all the proceeds of which inure exclusively to either organizations exempt from federal income taxes, or "in the *absence of a ruling* by the Internal Revenue Service, organizations determined by the commissioner of revenue services to be of a similar nature." (emphasis added). CPAF reasons that since the denial of its federal income tax exemption under § 501(c)(4) did not preclude it from applying for an exemption under § 501(c)(3), neither should that denial preclude the tax commissioner from finding CPAF similar to a § 501(c)(3) organization in granting an exemption on that basis. The state, on the other hand, essentially tenders a "plain meaning" argument; namely, that the statute says "in the absence of a ruling", and since there was a "ruling" in this instance, the commissioner was without authority to grant an exemption.

Connecticut law provides that statutes exempting a party from taxation are to be strictly construed against the party claiming the exemption. *See Connecticut Theater Foundation, Inc. v. Brown*, 179 Conn.

672, 677–78, 427 A.2d 863, 866 (1980). In addressing the statute, we are to be guided by its language, purpose, and legislative history, *see Anderson v. Ludgin*, 175 Conn. 545, 550–52, 400 A.2d 712, 716 (1978), and "the legislative intent must be ascertained from the language of the statute itself if the language is plain and unambiguous", *Connecticut Theater Foundation*, 179 Conn. at 676, 427 A.2d at 865.

The district court found that the "similar nature" exemption was added to the admissions tax to take into account smaller organizations, such as PTAs, that do not ordinarily seek IRS exemption from federal income taxation. Judge Burns noted:

> Uncontroverted testimony was presented to the bankruptcy court that, when originally presented to the legislature, the admissions tax act only allowed exemptions to organizations that had received IRS exemptions. The "similar nature" exemption was added to take into account smaller organizations, such as PTAs, which do not normally seek IRS exemptions.

Indeed, the very purpose of this tax legislation was to align admissions tax liability with income tax exemptions allowed by the IRS. Thus, it makes sense that an organization denied an income tax exemption by the IRS could not be granted an admissions tax exemption by the Connecticut tax commissioner, absent a subsequent grant of an exemption by the IRS.

The plain meaning of the statute, the scant legislative history, and the statute's apparent purpose all indicate that the Connecticut tax commissioner lacked authority to grant an exemption. Section 12–541(b) means what it says; thus, the IRS's *ruling* denying CPAF an exemption pursuant to § 501(c)(4) eliminated the commissioner's discretion to grant a "similar nature" exemption. Since the commissioner's grant of the exemption was not within his statutory authority, his original decision was a nullity, *accord United States v. Larionoff*, 431 U.S. 864, 873 & n. 12, 97 S.Ct. 2150, 2156 & n. 12, 53 L.Ed.2d 48 (1977), and he properly revoked CPAF's exemption.

Moreover, even accepting CPAF's argument that the § 501(c)(4) denial by the IRS did not preclude the commissioner from finding CPAF similar to a § 501(c)(3) organization, under the circumstances CPAF cannot realistically claim that there is an "absence of a [relevant] ruling". The IRS denied CPAF's § 501(c)(4) exemption, in part, because

> [In] view of the fact that the former operators of The Oakdale Musical Theatre Company, Inc., direct and control your operations, are stockholders in the lessor corporation of the facilities leased by you on a percentage of profits basis, and are privileged to conduct their private business operations on such property, it appears in part that you are operated in a manner designed to serve a private, rather than a public, interest.

An organization is not eligible for an exemption under § 501(c)(3) unless "it serves a *public* rather than a *private* interest." 26 C.F.R. § 1.501(c)(3)–1(d)(ii) (emphasis added). To meet this requirement the organization must "establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests." *Id.* Comparing the rationale for the denial of CPAF's § 501(c)(4) application with the requirements of § 501(c)(3), it appears that the very characteristic of CPAF fatal to its § 501(c)(4) application would also require rejection of its application under § 501(c)(3).

Nevertheless, it is sufficient for our conclusion that the plain meaning, legislative history, and purpose of § 12–541(b) mandate the result we reach. Because we hold that the tax commissioner was without discretion to grant CPAF its exemption from the admissions tax, we do not address the issue of CPAF's ability to recover the admissions tax it collected and paid after that exemption was revoked.

The judgment of the district court is affirmed.