[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned administrative appeal concerns the plaintiffs' claim that a hearing officer of the State Department of Social Services ("department") failed to give effect to a federal statute and an administrative regulation as written in CT Page 1331-II determining Mary Burinskas's eligibility for Medicaid benefits.
The department found that Mrs. Burinskas would not be eligible for Medicaid benefits to defray the cost of her nursing home care until she had expended on her care $92,156.52 of the non-exempt assets of herself and her husband, Walter Burinskas. The hearing officer calculated that Walter Burinskas could, under applicable eligibility guidelines, retain his monthly income of $1,726.37 plus $74,000 in liquid assets plus his home.
The plaintiffs claim that these calculations failed to give effect to a federal statute and a state regulation by which the non-applicant spouse is entitled to retain more of the liquid assets upon a showing of "exceptional circumstances resulting in significant financial duress."
Aggrievement
Because the plaintiffs' eligibility for a benefits program is at issue, the court finds that they are aggrieved by the administrative determination of the department. Water PollutionControl Authority v. Keeney, 234 Conn. 488, 494 (1995).
History of the Proceedings
On February 25, 1994, plaintiff Mary Burinskas ("applicant") applied to the defendant Department of Social Services for Medicaid benefits to provide assistance in paying for her nursing home care after she became incapacitated by Alzheimer's disease. the department found that because a person is not eligible for Medicaid if she has non-exempt assets in excess of $1,600.00, Mrs. Burinskas was ineligible for benefits until she spent down her share of the $172,456.52 of liquid assets which the department found that she and her husband, Walter Burinskas (whom the department terms a "community spouse"), owned in addition to their home, which was considered an exempt asset. The department determined that the applicant's share of the liquid assets under applicable eligibility guidelines was $99,769.52 and that the community spouse's share was $72,660.00, under guidelines which set aside part of a married couple's assets to meet the needs of the non-applicant spouse.
The plaintiffs sought a hearing on the ground that the amount of the assets allocated to the community spouse should be increased to reflect the presence of exceptional circumstances CT Page 1331-JJ necessitating an allocation of living expenses for him above the standard applied. The plaintiffs claim that the hearing officer, both initially and on reconsideration, failed to apply as written a provision of federal law, 42 U.S.C. § 1396r-5 (e)(2)(B) and a state regulation, Uniform Policy Manual § 1570.25(D)(33) that provide for increases in the "community spouse protected amount" (the share of the liquid assets allocated for the needs of the non-applicant spouse) if necessitated by "exceptional circumstances resulting in significant financial duress."
After a hearing conducted on June 9, 1994, the hearing officer affirmed the department's denial of the application for benefits but determined that the allocation to he community spouse should be increased to reflect his need for additional monthly income of $208.85 for his medical expenses and $102.00 for the cost of transportation to visit his wife in the nursing home. The hearing officer found that the total monthly needs allowance of the community spouse was $1,787.45. Subtracting from that amount his monthly income of $1,726.37, the hearing officer allocated an additional $1,210.00 of the couple's assets to him to generate the additional $61.08 in his monthly needs allowance. The hearing officer decreased the applicant's share of the liquid assets in the amount of $1,210.00 and in the further amount of $4,800.00 for a burial fund he found to be allowed by the eligibility guidelines. As a result of these adjustments, the department calculated the applicant's assets to be $92,156.52, such that she would not be eligible for Medicaid payments until she had expended all but $1,600.00 of that amount on her own care.
On November 3, 1994, the plaintiffs requested a reconsideration of the decision of the hearing officer on the ground that he had improperly failed to alter further the Community Spouse Protected Amount to allow for such other monthly expenses as house cleaning, maintenance, lawn care, snow removal, car tires, car insurance, car loan payments, car maintenance, gasoline, groceries, hygiene items and newspaper. (Record, pp. 68-70.) In their request for reconsideration, the plaintiffs made the global claim that the amount of the monthly expense allowed to the husband was too low to prevent undue hardship. (Record, p. 69.) More narrowly, they claimed that the husband suffered from emphysema, a condition that not only necessitated the medical expenses recognized by the hearing officer in adjusting his allocation by $208.85 monthly, but also made it necessary for him to hire others to perform household work and required him to be CT Page 1331-KK able to pay for the expense of operating a car, since he was unable to walk to a bus stop. (Record, p. 69.)
The record contains as an exhibit at the fair hearing a letter from a pulmonary doctor stating that Mr. Burinskas has "severe emphysema with an asthmatic component" and that "due to his lung disease he is unable to perform several of the usual household tasks including laundry and cleaning." The physician noted "[h]e has been on oxygen continuously and is presently on oxygen at nighttime." (Record, p. 63.)
The hearing officer declined to make any further adjustments to the community spouse's monthly maintenance needs allowed upon reconsideration.
The plaintiffs appealed from the decision upon reconsideration. They included in their complaint to the court not only the administrative appeal but also a count claiming denial of equal protection of the law. The court, Stengel, J., denied a motion to strike that claim but granted a motion for a protective order denying the plaintiffs the right to file interrogatories or other discovery motions in aid of their claims.
At oral argument as to the administrative appeal, the plaintiffs sought to introduce documentary evidence. No witness was presented to authenticate the documents, they bore no certification, and this court sustained an objection on the basis of lack of foundation, without reaching other objections to their being considered by the court at oral argument of the administrative appeal.
Standard of Review
A court reviewing a determination by the Department of Social Services must decide whether that administrative entity acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. General Statute § 4-183j; Connecticut Alcohol Drug Abuse Commission v. FOIC, 233 Conn. 28, 39 (1995); Ottochianv. Freedom of Information Commission, 221 Conn. 393, 397 (1992). While conclusions of law reached by an administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts, courts must determine whether the agency "employed the proper legal standard in CT Page 1331-LL reaching its factual determination." Connecticut Alcohol DrugAbuse Commission v. FOIC, 233 Conn. 38, 39. Deference to an agency's interpretation of the meaning of a statute is not due if the agency's interpretation violates principles of statutory construction. Connecticut Alcohol Drug Abuse Commission v.FOIC, 233 Conn. 41-42. In CADAC v. FOIC, the Supreme Court found that the administrative agency had failed to give effect to the actual words of the statute at issue. The case now before this court likewise presents the claim of lack of adherence to the words of the statute and regulation on which the contested determination is based.
Standard for Allocation of Assets
Medicaid is a federally sponsored program of medical benefits for poor people enacted by Congress in 1965 as Title XIX of the Social Security Act. In Connecticut, the Medicaid program is administered by the Department of Social Services pursuant to General Statutes § 17b-260. That department is required to follow federal requirements and standards with regard to eligibility. Clark v. Commissioner, 209 Conn. 390, 396-97 (1988).
 Stated another way, the federal statutes and regulations set a limit upon the authority of the commissioner [of social services] as well as furnishing a guide to his administration of the [Medicaid] program.
Clark v. Commissioner, 209 Conn. 390, quoting Morgan v.White, 168 Conn. 336, 343-44 (1975).
The method of calculating of a Medicaid applicant's assets is set forth in 42 U.S.C. § 1396r-5. That statute provides that all non-exempt resources held by either spouse shall be considered available to the institutionalized spouse, except for,inter alia, a "community spouse monthly income allowance" consisting of a minimum monthly maintenance needs allowance ("MMNA") that "is equal to or exceeds" one hundred fifty percent of the official poverty line for a family unit of two members plus an excess shelter allowance consisting of the community spouse's expenses for rent or mortgage payments, including principal, interest, taxes and insurance to the extent that these expenses exceed thirty percent of the monthly allowance, plus a standard utility allowance. 42 U.S.C. § 1396r-5(d)(2), (3), (4).
The federal statute provides as follows, at CT Page 1331-MM42 U.S.C. § 1396r-5(e)(2)(B) with regard to revision of the minimum monthly maintenance needs allowance:
 If either such spouse establishes that the community spouse needs income, above the levels otherwise provided by the minimum monthly maintenance needs allowance, due to exceptional circumstances resulting in significant financial duress, there shall be substituted, for the minimum monthly maintenance needs allowed in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary.
Pursuant to General Statutes § 17b-10, the department enacted a Uniform Policy Manual to implement the federal law as to the Connecticut program. Section 1570.25D of that Manual provides as follows:
 (D) Non-Administrative Duties of Fair Hearing Official 3. The official increases the MMNA of the community spouse previously determined by the Department:
 a) If it is established by the community spouse that the community spouse needs a higher monthly income than permitted by the MMNA calculation; and
 b) If this need for a higher income is due to exceptional circumstances resulting in significant financial duress including, but not limited to, the financial burden of caring for a disabled child, sibling, or other immediate relative.
c) without limiting his or her consideration to:
 1) the shelter expenses indicated in policy (Cross Reference 5035.30); or
 2) the limitations placed on the MMNA (Cross Reference 5035.30).
At the fair hearing, Mr. Burinskas presented medical evidence to the effect that long-standing emphysema prevented him from performing household chores and maintenance himself. He claimed that his health condition and inability to do household tasks requiring exertion constituted an exceptional circumstance resulting in significant financial duress that necessitated a higher monthly needs allowance. CT Page 1331-NN
The hearing officer listed certain findings. Neither initially nor on reconsideration did the hearing officer make any finding stating whether or not he considered the husband's pulmonary condition and limitations to be "exceptional circumstances resulting in significant financial distress."
The hearing office made only the following findings directed at the claim of exceptional circumstances:
 12. The Community Spouse's medical expenses of $208.85 are exceptional circumstances resulting in significant financial duress (UPM, Section 1570.25(D)(3).
 15. The Community Spouse's transportation expenses for visits with his wife are exceptional circumstances resulting in significant financial duress.
 16. The following expenses claimed by the Appellant are not exceptional circumstances: car insurance, cable, car tax, newspaper, New England Health and Racquet, motor club, car registration, golf club dues, golf fees, service dues, Elks, snow removal and lawn care, housekeeping, clothes, gas, groceries, hygiene, recreation, vacation, car payments and repairs.
The plaintiffs claim that the hearing officer failed to adjudicate their claim on the basis of applicable law in that he proceeded upon an invalid and inaccurate approach to the "exceptional circumstances" provisions of state and federal law set forth above. Instead of determining whether exceptional circumstances existed and whether they resulted in "significant financial duress" that necessitated a higher monthly maintenance needs amount to be allocated to the community spouse, the hearing officer analyzed whether each expense listed by the community spouse constituted an "exceptional circumstance." The plaintiffs characterize the process followed by the hearing officer as the changing of an "exceptional circumstances" test to an "exceptional expenses" test. They argue that the hearing officer applied a standard different from the one required by federal law and by state regulations. The correctness of their position is borne out by the text of the hearing officer's decision. After framing the issue within the terms of the statute and regulation cited above, the hearing officer made no finding as to whether the husband's disabling emphysema constituted an "exceptional CT Page 1331-OO circumstance resulting in significant financial distress" or whether that condition made necessary a higher amount of monthly income. Instead, he issued findings as to whether each claimedexpense was an "exceptional circumstance", as set forth above.
After correctly citing the applicable provisions at page 6 of his ruling (Record, p. 14), the hearing officer provided a paraphrase that radically departed from the meaning of those provisions:
 Thus, for an expense to be included as part of the income needs of the Community Spouse, the expense must pass a two-part test:
a) the expense must be an exceptional circumstance; and
b) the expense must create significant financial duress.
The hearing officer then explained the "[e]xpenses that are expected and are incurred in the normal course of everyday living are not exceptional circumstances. Thus, food, clothing, lawn mowing, snow removal are not exceptional circumstances. These expenses are expected everyday expenses of living and of home ownership, and therefore are not exceptional, extraordinary, uncommon or sudden in nature." (Record, p. 14.)
The hearing officer unmistakably took his task to be determining whether an expense was exceptional or usual, not whether the community spouse had established that he had a need for a higher monthly maintenance needs amount due to exceptional circumstances resulting in significant financial duress.
The words of both the federal statute and t]he state regulation plainly require the hearing officer to determine the issue as one of exceptional circumstances necessitating higher monthly income. The words of those provisions do not authorize a hearing officer instead to determine whether each expense reported by a community spouse is an exceptional or an ordinary one, and that is what the hearing officer has done.
The example of "exceptional circumstances" included in the regulation plainly indicated that the hearing officer should consider the spouse's situation, not the nature of each living expense. UPM § 1570.25(D) indicates that "the financial burden of caring for disabled child, sibling or other immediate CT Page 1331-PP relative" would be an example of exceptional circumstances resulting in significant financial duress." The exceptional circumstance identified in that example is the situation of providing care for another relative. The financial-duress is the potential additional costs engendered by that situation. If the hearing officer who reviewed the plaintiffs' application had applied his "exceptional expenses" test to the example, he would probably have found that the cost of hiring a house cleaner because the community spouse was occupied in nursing the relative was simply an ordinary cost, since houses customarily need to be cleaned.
The regulation notes that the examples of caring for disabled relatives is not the only circumstance to be considered exceptional, since the example is prefaced by the words "including but not limited to."
The department points out that the hearing officer did notconsistently rely on the nature of the expense rather than its root in exceptional circumstances, in that he allowed an increase in the monthly income based on Mr. Burinskas's own medical expenses and the expense of visiting his wife in the nursing home. The fact that the hearing officer's use of an analysis different from the required one nevertheless resulted in some adjustments does not alter the error of the analysis.
If the husband's emphysema was an exceptional circumstance that engendered increased medical costs, the hearing officer should have analyzed whether that same exceptional circumstance prevented the husband from performing household tasks that could be performed by a healthy community spouse. The law required that he decide if such conditions necessitated hiring others to do them, and, if so, whether significant financial duress resulted. The hearing officer performed no such analysis because of his view, unsupported by the text of either the regulation or the statute, that his task was to analyze the ordinary or exceptional nature of the expense, not the circumstances that led to the expense.
The decision of the hearing officer is the decision of the department. An administrative authority must act strictly within the bounds of the statutes and regulations which limit its authority to act. Lundy Electronics Systems, Inc. v. TaxCommissioner, 189 Conn. 690, 694 (1983); Page v. WelfareCommissioner, 170 Conn. 258, 262 (1976). The rules of statutory CT Page 1331-QQ construction apply to administrative regulations as well as to statutes. Preston v. Department of Environmental Protection,218 Conn. 321, 829 n. 9 (1991); Dugas v. Lumbermens Mutual CasualtyCo., 217 Conn. 631, 641 (1991).
By adjudicating the plaintiffs' claims on the basis of a standard different from the standard plainly stated in the governing federal statute and state regulations, the department acted in violation of statutory provision, in excess of the statutory authority of the agency, and upon unlawful procedure. Pursuant to General Statutes § 4-183(j)(1), 2), and (3), the determination by the department must be set aside. The case is remanded to the department for adjudication according to the standards required by 42 U.S.C. § 1396r-5 and UPM § 1570.25(D).
Claim for Award of Fees and Expenses
The plaintiffs seek an award of counsel fees and costs incurred in connection with their appeal from an adjudication in which the hearing officer failed to apply applicable law and standards as written.
General Statutes § 4-184a(b) provides that in any appeal by an aggrieved person of an agency decision taken in accordance with § 4-183, the court may, in its discretion, award to the prevailing party reasonable fees and expenses in addition to other costs "if the court determines that the action of the agency was undertaken without any substantial justification."
This court has found that the words of the statute and regulations provided a clear standard and approach for the hearing officer to apply and that he simply failed to give effect to the words of those provisions and instead applied an approach and a standard not expressed in the words of the statute or the regulation. While the department argued at oral argument that the hearing officer "was doing his best", his clear departure from the words of the governing statute and regulation have deprived the plaintiffs of a proper review of their claim and have required them to file an appeal to obtain a hearing in which the actual legal standard will be applied.
The court has reviewed the claim of plaintiffs' counsel with regard to time spent on the appeal. Compensation may be awarded only for fees and expenses "reasonably incurred", a term that CT Page 1331-RR does not include compensation for time spent on unnecessary activities or activities ill-designed to achieve a legally available result. The court finds that the amount of counsel fees reasonably incurred in this appeal is $2,550.00 (19 hours $150.00 per hour, the indicated billing rate of the associate who performed most of the legal work) and that the plaintiffs reasonably incurred $197.00 in costs including the filing and service fees, for a total of $3,047.00. The court finds that the hearing officer's departure from the standard clearly stated in the applicable statute and regulations was without any substantial justification, given the unambiguous content of those provisions and the absence of any suggestion in them that the nature of the expense, rather than the nature of the circumstances engendering the expense, was the proper inquiry.
Conclusion
The plaintiffs' application is remanded to the department for a hearing to be adjudicated according to the actual provisions of state and federal law. The plaintiffs shall recover $3,047.00 from the department pursuant to § 4-184a(b).
Beverly J. Hodgson Judge of the Superior Court