### ELIZABETH PAGE *v.* WELFARE COMMISSIONER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 18, 1975—decision released February 24, 1976

*Alice Bussiere,* with whom, on the brief, was *Norman J. Johnson,* for the appellant (plaintiff).

*Edward F. Reynolds, Jr.,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

BARBER, J. Pursuant to § 17-82e of the General Statutes, the welfare commissioner found that the plaintiff was liable for the support of her mother, who was a recipient of public assistance, and determined that she should contribute $78 a month toward such support. At the plaintiff's request, a fair hearing was held in accordance with the provisions of § 17-2a of the General Statutes, and the amount of her monthly contribution was confirmed. Thereafter, the plaintiff's appeals to the Circuit Court and to the Appellate Division of the Court of Common Pleas were dismissed. The matter is now before this court upon the granting of a petition for certification.

In her appeals to the Circuit Court and the Appellate Division, the plaintiff alleged that the regulations upon which the commissioner based his computation of the amount of the plaintiff's monthly contribution violate the equal protection and due process clauses of the fifth and fourteenth amendments to the constitution of the United States.[1]

---

[1] The fifth amendment to the constitution of the United States, while containing no equal protection clause, forbids discrimination that is so unjustifiable as to be violative of due process. The approach to equal protection claims under the fifth or fourteenth amendments has always been precisely the same. *Weinberger* v. *Wiesenfeld,* 420 U.S. 636, 638 n.2, 95 S. Ct. 1225, 43 L. Ed. 2d 514.

Before this court, the plaintiff raises an additional claim of equal protection under the constitution of Connecticut, article first, § 20, as amended.[2] The amendment, which appears in footnote 2, became effective November 27, 1974, the day after the decision of the Appellate Division of the Court of Common Pleas. This amendment affirmatively includes within its protection all persons regardless of sex.[3]

The facts, limited as they are, are not in dispute.[4] Section 17-82e of the General Statutes provides, in part, that the welfare commissioner, upon receiving an application for public assistance from a parent less than sixty-five years of age, shall investigate the financial condition of the applicant's child and determine his or her ability to contribute to the support of the parent "in accordance with a reasonable contribution scale established by said commissioner." The plaintiff's mother was, in 1973, a recipient of public assistance and less than sixty-five years old. The commissioner's financial investigation revealed that the plaintiff was married, living with her husband, and the mother of four minor

[2] "[Conn. Const. art. I § 20] No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex."

[3] The Connecticut equal rights amendment, referred to above, is not to be confused with the equal rights amendment to the United States constitution (ERA) which has not been adopted, although Connecticut ratified it on March 15, 1973. The Connecticut amendment is binding on the courts of this state; but the United States amendment, not having been ratified by the requisite number of states, is of no effect.

[4] The printed record does not contain the decision and finding of the fair hearing officer, nor are they printed in the appendix to either party's brief. See Practice Book § 645. We have, nevertheless, consulted relevant portions of the record before the fair hearing officer which was properly returned to the trial court.

children. Both the plaintiff and her husband were employed, with gross monthly incomes of $481 and $649.50, respectively. In determining the amount of the plaintiff's monthly contribution to the support of her mother, the commissioner allowed her an exemption of $325, which was then the exemption for a single person living outside the home of the public assistance recipient. No exemption was allowed the plaintiff for her four children. The support contribution was computed by taking one-half of the difference between her gross monthly income and the exemption allowed. This resulting amount, $78, was assessed monthly against the plaintiff.

In computing the amount of the plaintiff's monthly support contribution, the commissioner followed the welfare department regulations. 1 Conn. State Welfare Dept. Manual, c. III, index 344.1 through index 344.4. Index 344.1 provides for deducting "from the total [monthly] gross the exempt amount allowed for the number of persons dependent on the [liable] relative's income." Index 344.2 is the exemption scale for legally liable relatives. Index 344.3 provides special exemptions for legally liable relatives, including exemptions for medical expenses in excess of 3 percent of the annual gross income, court orders of support, and voluntary support of a dependent living outside of the home. Finally, index 344.4 enunciates a policy regulation which provides that a legally liable married daughter is allowed only the exemption for a single person living outside the home of a beneficiary and that her own children are not counted as dependents.[5]

[5] "[1 Conn. State Welfare Dept. Manual, c. III] Index 344.4 CONSIDERATION OF INCOME. Only the income of the legally liable relative is considered. When the legally liable son or daughter and

Index 344.1 through 344.4 were enacted pursuant to § 17-82e which specifically contemplates the establishment of "a reasonable contribution scale"; § 17-83 (a), which directs the commissioner to "make regulations necessary to enable him to carry out the provisions of . . . [the statutes relating to public assistance]"; and § 17-2, which directs the commissioner to issue regulations which include all written statements implementing or interpreting the statutes under which he operates.

Index 344.4, set out above, clearly provides more exemptions for married men with minor children and working spouses than it provides for married women with minor children and working spouses. The plaintiff's basic contention is that this gender-based difference in treatment violates the equal protection and due process clauses of the United States and Connecticut constitutions.

An administrative agency, in making rules and regulations, must act within its statutory authority, within constitutional limitations, and in a lawful and reasonable manner. *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771; *Loglisci* v. *Liquor Control Commission,* 123 Conn. 31, 37, 192 A. 260. "[T]he modern tendency is liberal in approving broad regulatory standards so as to facilitate the oper-

---

his (her) spouse both have income, the following procedures apply: a. Son is the legally liable relative—exclude his wife from the count of dependents. b. Daughter is the legally liable relative—count no dependents. The daughter is allowed the exemption for a single person living outside the home of a beneficiary (1b). c. When advantageous to the family, compute the contribution on the basis of the combined income of relative and spouse and the total number of persons dependent upon the combined income."

ational functions of administrative boards or commissions." *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 679, 236 A.2d 917; *Morgan* v. *White,* 168 Conn. 336, 348, 362 A.2d 505. An agency which has authority to enact regulations is vested with a large measure of discretion and the burden of showing that an agency has acted improperly rests upon the one who asserts it; *Riley* v. *Board of Police Commissioners,* 147 Conn. 113, 117, 157 A.2d 590; and courts are warranted in assuming that a reasonable and rational result was intended and must construe such regulations accordingly. *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 609, 266 A.2d 382. The burden of proving unconstitutionality is upon the plaintiff. *Langs* v. *Harder,* 165 Conn. 490, 502, 338 A.2d 458; *Roan* v. *Connecticut Industrial Building Commission,* 150 Conn. 333, 338, 189 A.2d 399. In passing upon the validity of index 344.4, the issue is whether the regulation illegally impinges upon the plaintiff's constitutional rights. *West* v. *Egan,* 142 Conn. 437, 447, 115 A.2d 322.

On appeal to this court, the plaintiff claims that index 344.4 is constitutionally invalid in three respects. First, there is no substantial rational connection between the gender-based classification created by index 344.4 and the objectives of § 17-82e, as required by the equal protection clause of the fourteenth amendment to the constitution of the United States. Second, index 344.4 cannot withstand the strict scrutiny which the equal rights amendment to the constitution of Connecticut requires all gender-based classifications to undergo. Third, index 344.4 creates an irrebuttable presumption that the income of working married women is not necessary for the support of their minor chil-

dren, which irrebuttable presumption is invalid under the due process clause of the fourteenth amendment to the constitution of the United States.

Prior to the amendment of article first, § 20, of the constitution of Connecticut, our decisions often noted that the equal protection clauses of the state and federal constitutions mean substantially the same thing and may be considered together. *Tough* v. *Ives,* 162 Conn. 274, 292, 294 A.2d 67; *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621; *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702. We have on two recent occasions considered claims of sex discrimination and, in both instances, have relied heavily on then current United States Supreme Court cases construing the equal protection provisions of the federal constitution.

In *Kellems* v. *Brown,* 163 Conn. 478, 494, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678, we held that the equal protection clauses of both constitutions apply to all persons regardless of sex. Citing *Reed* v. *Reed,* 404 U.S. 71, 75, 92 S. Ct. 251, 30 L. Ed. 2d 225, for the proposition that "[i]n the absence of some reason to the contrary, men and women similarly situated must be treated equally under the law"; *Kellems* v. *Brown,* supra, 495; we ruled invalid a special exemption from the state capital gains tax granted to widows but not widowers. But compare *Kahn* v. *Shevin,* 416 U.S. 351, 94 S. Ct. 1734, 40 L. Ed. 2d 189.

One year after *Kellems,* we upheld the validity of § 46-21 of the General Statutes which, before it was amended by 1973 Public Acts, No. 373, provided alimony pendente lite for wives but not for hus-

bands. *Stern* v. *Stern,* 165 Conn. 190, 332 A.2d 78. In *Stern,* we held that "the sex-based classification . . . must stand unless it is unreasonable and arbitrary and does not rest on some ground having a fair and substantial relation to the object of the legislation." Id., p. 195. In so holding, we rejected the plaintiff's argument, based on the plurality opinion in *Frontiero* v. *Richardson,* 411 U.S. 677, 93 S. Ct. 1764, 36 L. Ed. 2d 583, decided two weeks before our decision, that sex-based classifications are inherently suspect and, therefore, must be subjected to strict judicial scrutiny. "The concurring opinion of Mr. Justice Powell in *Frontiero* v. *Richardson* . . . convinces this court, however, that a sufficient reason exists for not identifying sex at this time as a suspect classification. As he stated, '[t]he Equal Rights Amendment, which if adopted will resolve the substance of this precise question, has been approved by the Congress and submitted for ratification by the States.' . . . There appears to be no sufficient reason in this case to preempt the resolution of this issue now underway in the political process." *Stern* v. *Stern,* supra, 194-95.

In the two years since rendering its decision in *Frontiero,* the United States Supreme Court has consistently refused to hold that classifications based on sex are inherently suspect. In *Kahn* v. *Shevin,* supra, the court upheld a Florida statute granting certain tax exemptions to widows but not widowers, holding (p. 352) that the sex-based classification had a "fair and substantial relation to the object of the legislation," which object was the reduction of the disparity between the economic capabilities of men and women. And in *Schlesinger* v. *Ballard,* 419 U.S. 498, 95 S. Ct. 572, 42 L. Ed. 2d 610, the court held that a federal statute, which

accorded female naval officers a thirteen-year tenure before mandatory discharge for lack of promotion while male officers were granted only a nine-year tenure before discharge on similar grounds, was completely rational in view of the dissimilar opportunities for promotion afforded female officers.

But the court has also ruled that § 402 (g) of the social security laws, which provided widows with children an allowance for themselves and their children, but provided widowers with an allowance only for their children, could not be rationally related to the purpose of that statute, which is to enable a surviving parent to remain at home to care for young children. *Weinberger* v. *Wiesenfeld,* 420 U.S. 636, 95 S. Ct. 1225, 43 L. Ed. 2d 514. And in *Stanton* v. *Stanton,* 421 U.S. 7, 95 S. Ct. 1373, 43 L. Ed. 2d 688, the court considered a Utah statute which required a parent to support his male children until the age of twenty-one, but his female children only to the age of eighteen. The court concluded "that under any test—compelling state interest, or rational basis, or something in between— . . . [the statute under consideration], in the context of child support, does not survive an equal protection attack." Id., 17.

The plaintiff urges that the precise condition precedent to using a strict scrutiny test as set forth in Justice Powell's opinion in *Frontiero,* and adopted by this court in *Stern,* has been satisfied with the adoption by Connecticut of the equal rights amendment. Therefore, the plaintiff argues that this court should subject classifications based upon sex to strict judicial scrutiny, despite the United States Supreme Court's refusal to do so.

The defendant, while not denying that the passage of the equal rights amendment mandates the use of a "strict scrutiny" test in future litigation, contends that the amendment is not in fact applicable to the present case. The amendment was not adopted until after the Appellate Division had formulated its opinion and, therefore, its effect upon the regulations in question was not discussed at any of the three prior proceedings, nor was it incorporated in claims of law raised at those proceedings. "Claims of law must be raised before the trial court and ruled upon adversely to a defendant's claim if they are to furnish a basis for a successful appeal to this court. Practice Book §§ 223, 652; *Bigionti* v. *Argraves,* 152 Conn. 700, 701, 204 A.2d 408; Maltbie, Conn. App. Proc. § 305." *Connecticut Savings & Loan Assn.* v. *Mitchell,* 169 Conn. 636, 638, 363 A.2d 1027. Under the peculiar facts of the present case, however, it is clear that a new constitutional right has arisen between the time of trial and the appeal, and newly raised claims may be considered by this court under such circumstances. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576; see *O'Connor* v. *Ohio,* 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189; *State* v. *Vars,* 154 Conn. 255, 271–72, 224 A.2d 744. "It is generally recognized that a constitutional amendment, even if it is not self-executing, may, immediately upon its adoption, supersede a former provision if it is clear that it was the intention of the people in adopting it that it would do so." *State ex rel. Cotter* v. *Leipner,* 138 Conn. 153, 160, 83 A.2d 169.

We need not decide whether the strict scrutiny test mandated by the equal rights amendment is applicable to the present case, for index 344.4, like the Utah statute ruled invalid in *Stanton* v. *Stanton,*

supra, 17, cannot survive an equal protection attack "under any test—compelling state interest, or rational basis, or something in between."

The regulations here in question clearly differentiate between working married mothers and working married fathers. The earnings of the latter are granted significantly greater exemptions in the determination of financial ability to contribute to the support of a needy parent than are the earnings of the former. As a result of this distinction, working mothers married to working husbands are able to contribute only a disproportionately small share to the support of their immediate household. The benefits which flow to the immediate household of a working parent who is also liable for the support of his or her disabled parent, therefore, depend upon the sex of the working parent. This is precisely the situation which the Supreme Court ruled unconstitutional in *Weinberger* v. *Wiesenfeld,* supra, 643, noting that an " 'archaic and overbroad' generalization . . . [*Schlesinger* v. *Ballard,* 419 U.S. 498, 508, 95 S. Ct. 572, 42 L. Ed. 2d 610] 'not . . . tolerated under the Constitution' underlies the distinction drawn by § 402 (g), namely, that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support." "Obviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support. See *Kahn* v. *Shevin,* 416 U.S. 351, 354 n.7, 94 S. Ct. 1734, 40 L. Ed. 2d 189 (1974). But such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support."

*Weinberger* v. *Wiesenfeld,* supra. The distinction drawn by index 344.4 clearly falls within the proscription of *Weinberger* v. *Wiesenfeld.*

The Appellate Division, in upholding the validity of index 344.4, held that "[i]n order to carry out the twofold purpose of . . . [§ 17-82e]—the support of the poor and the protection of the public purse—the commissioner is justified in considering, in addition to one's obligation to one's own survival, only one's basic *legal obligations* to support one's family. . . . If the commissioner were to consider expenses other than one's need to support oneself and one's obligations to support one's family, the important duty to support one's indigent parents would be sharply curtailed and the purposes of Sec. 17-82e could not be effectively carried out." The court then held that in light of § 46-9 and § 46-10 a husband has a legal obligation to support his family, while a wife does not, and that the commissioner was, therefore, correct in limiting a working wife to only a single exemption for herself.

In reaching this conclusion, the court erred. Firstly, § 17-82e neither requires nor authorizes the commissioner to limit his consideration of dependents to strictly legal obligations in permitting exemptions from gross income. The plain language of that section merely requires the commissioner to determine the "financial ability" of legally liable relatives to contribute to the support of public assistance recipients "in accordance with a reasonable contribution scale." The reliance by the commissioner upon what he perceives to be the statutory obligations of the legally liable relatives, rather than a determination of the amount actually contributed by working mothers to the support of their

children, and the need of the children for that support, is precisely the type of mechanical determination in the name of "administrative efficiency" specifically condemned in *Reed* v. *Reed,* supra; *Frontiero* v. *Richardson,* supra; and *Schlesinger* v. *Ballard,* supra. Secondly, although § 46-10 does provide that "[i]t shall be the duty of the husband to support his family," it also provides that both the husband and wife shall be liable for reasonable medical expenses of the family, for the rental of any premises occupied by the family, and "when any article purchased by either has in fact gone to the support of the family." The husband has the primary duty to support his family, but the wife is also liable for family expenses. Section 46-10 does not exempt a wife from any legal obligation towards her family. See also General Statutes § 46-57, which deals with a situation where the respective duties of parents for the maintenance of minor children must be considered. Finally, the regulations do not in fact limit exemptions from gross income to the legal obligations of the liable relative. As noted above, index 344.3 of the regulations provides exemptions for certain medical and other expenses.

The finding of the fair hearing officer that it was more beneficial to the plaintiff to compute her contribution on the basis only of her income rather than the combined income of the plaintiff and her spouse is insufficient to purge the mechanical discriminatory classification embodied in the regulations.

In promulgating regulations which permit a husband more exemptions from his gross monthly income than a wife in similar circumstances, the

commissioner has acted arbitrarily, in abuse of his discretion, and in such a manner as to impinge upon the constitutional rights of the plaintiff.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.