[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Elizabeth C. Dolgner appeals a decision of the defendant commissioner of human resources revoking her family day care home registration. The commissioner acted pursuant to General Statutes § 17-588 and the Regulations of State Agencies § 17-31q. The plaintiff brings this appeal pursuant to General Statutes § 4-183. The court finds the issues in favor of the defendant commissioner.
Certain essential facts are not in dispute. At all relevant times the plaintiff has operated a family day care business at her home in Manchester under a registration or license issued by the department of human resources. In September 1991, the department received information that the Manchester Police Department and the department of children and youth services (DCYS) were investigating allegations of sexual and physical abuse of children enrolled in the plaintiff's day care home. On September 27, 1991, DCYS informed the department that it had confirmed that there were cases of emotional abuse, physical discipline and inappropriate supervision of the day care children.
On October 3, 1991, the department mailed the plaintiff a certified letter proposing to revoke her day care registration. The plaintiff responded by requesting a more definite statement of the factual basis of the proposed revocation. The department replied by letter in which it summarized the report of the DCYS investigation. Efforts by the parties to negotiate a settlement of some kind were not successful, and the department convened a fair hearing at the request of the plaintiff.
The hearing commenced on June 30, 1992. Both the plaintiff and the department presented numerous witnesses and other evidence. The plaintiff, represented by counsel, testified in her own behalf. Two other significant witnesses were Georgette Katin, the DCYS investigator who interviewed some of the children, and Robert Harss, a detective in the Manchester Police Department who joined with Katin in the interviews. In addition, certain documents, marked for identification only, were inspected by the plaintiff's attorney and the department prior to the testimony of the witnesses, although they were not formally introduced as evidence. CT Page 12068 These included the DCYS report of its investigation and the report of the Manchester Police Department.
Following the hearing, the fair hearing officer rendered the department's final decision revoking the plaintiff's license. The officer's decision was based on her findings (1) that "there is a DCYS record indicating that DCYS confirmed emotional abuse, the use of physical discipline and inappropriate supervision of the day care children by the appellant" and (2) that the "Appellant failed to be responsible for humane care, proper attention, supervision, control and discipline when she engaged in abusive, neglectful, corporal, humiliating and frightening treatment and punishment of day care children and when she failed to be responsible for the supervision of children at all times . . . ." The hearing officer concluded that these facts constituted violations of sections 17-31q-15(i)(2) and 17-31q-19(h)(3) of the Regulations of Connecticut State Agencies. Under General Statutes § 17-588(a), the commissioner has discretion to revoke the license of any day care provider who fails substantially to comply with the department's regulations.
The plaintiff advances three arguments as the bases of her appeal: (1) that the department gave her inadequate notice of the factual basis of the charges against her; (2) that the hearing officer's factual findings were based on insufficient evidence; and (3) that the hearing officer's findings were improperly based on hearsay evidence.
The plaintiff's claims on appeal are related by a common issue. That is whether the existence of a DCYS report of child abuse, standing alone, without independent and direct proof of such abuse at a department of human resources hearing, provides sufficient basis for the department to revoke a day care registration. The department's decision in this regard was based on Regs., Conn. State Agencies § 17a-31q-15(i)(2). That regulation reads as follows:
 A finding that there is a DCYS record or an ongoing DCYS investigation . . . may provide a sufficient basis for the Commissioner to take immediate action CT Page 12069 against the party so found. The Commissioner may deny a day care application; summarily suspend and/or propose to revoke a registration . . . depending on the particular circumstances of a given case.
The sole basis of the plaintiff's attack on § 17-31q-15(i)(2) of the department's regulations in this case is that it permitted the department to rely on hearsay evidence in deciding to revoke the plaintiff's registration. The plaintiff claims that the department should have required direct evidence of abuse — that is, the testimony of the children involved — before revoking her registration on that basis. As a corollary to this argument, the plaintiff claims that the failure of the department to call the children whom the DCYS case worker and the Manchester police officer interviewed unfairly deprived her of the right of cross examination. Further, she claims she was prejudiced because the only evidence of the report and its contents introduced at the hearing was the testimony of the DCYS case workers who authored it. The plaintiff argues that the report should have been introduced in evidence at the hearing.
General Statutes § 4-178 provides that "(a)ny oral or documentary evidence may be received" at the administrative hearing of a contested case, and our courts have held that this includes even hearsay evidence so long as it is reliable and probative. Cassella v.Civil Service Commission, 4 Conn. App. 359, 362 (1985); aff'd 202 Conn. 28, 33 (1987). "It is fundamental that the administrative tribunals are not strictly bound by the rules of evidence and that they may consider exhibits which would normally be incompetent in a judicial proceeding, so long as the evidence is reliable and probative." Griffin v. Muzio, 10 Conn. App. 90, 93,521 A.2d 607, cert. denied, 203 Conn. 805, 525 A.2d 520
(1987).
In this case, the hearsay evidence was the testimony of Katin and Harss as to what the children told them concerning abuse. It was obviously probative on the issue of the plaintiff's suitability for licensure as a day care operator. CT Page 12070
The testimony of Katin and Harss was also sufficiently reliable to be admissible at an administrative hearing. The court reaches this conclusion with some difficulty because the transcription of the testimony at the hearing, taken from audio tapes, can only be described as atrocious. Nevertheless, it is possible to glean from it that Georgette Katin is a DCYS case worker experienced in investigating allegations of child abuse. She interviewed children enrolled in the plaintiff's day care facility and concluded that they had been abused. She reported her findings to her supervisors, David English and Ann Killam, who concurred that the facts reported by the children to Katin constituted abuse. The DCYS workers jointly prepared the report that was sent to the department of human resources. The testimony of Harss was in all respects consistent with that of Katin.
There was no evidence that any of these witnesses had any bias or prejudice concerning the plaintiff. All of these witnesses were acting in accordance with their duties and responsibilities under applicable laws and regulations. Although Katin and Harss jointly interviewed the children, they were acting independently in their official capacities. They were essentially "unbiased professional(s) with no interest in the outcome of the proceedings." See Cassella, supra, 4 Conn. App. at 367. The plaintiff had full opportunity to cross examine each of them.
The department also afforded the plaintiff's attorney the opportunity to examine the DCYS and police reports prior to cross examining the witnesses. These reports informed the plaintiff's attorney of the identity of the children who were allegedly abused as well as the substance of their statements. Counsel for the department at the administrative hearing explicitly acknowledged that this information enabled the plaintiff's attorney to subpoena the children and/or their parents and call them as witnesses. The plaintiff's attorney did not do so, however, apparently preferring to emphasize the hearsay nature of the department's evidence.
Based on the facts and circumstances outlined above, the court concludes that the hearing officer was CT Page 12071 justified in admitting the testimony of Katin and the other witnesses to prove the existence of the DCYS report and to reveal the essential content of that report. With respect to the plaintiff's claim that the report itself should have been admitted in evidence, the court notes that General Statutes § 17a-101(g) requires that such reports be kept confidential. Inasmuch as the authors of the report testified as to its existence and contents and the plaintiff s attorney had an opportunity to examine it, the plaintiff was not prejudiced by its absence in the record.
The issue remains whether the DCYS report, its existence and contents having been proved, is sufficient justification under the law for evocation of the plaintiff's license.
It is appropriate here to restate certain basic principles of administrative law. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted. . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Boardof Education v. Freedom of Information Commission,208 Conn. 442, 452 (1988).
As noted, the authority of the department to revoke a day care registration because of the existence of an adverse DCYS report is based on a department regulation. That regulation, § 17-31q-15(i)(2), quoted above, expressly grants the department such authority. "[V]alidly enacted regulations of an administrative agency carry the force of statutory law." GriffinHospital v. Commission on Hospitals and Health Care,200 Conn. 489, 497 (1986). "Regulations promulgated by an agency having authority to do so are presumed valid."Phelps Dodge Copper Products Inc. v. Groppo, 204 Conn. 122,134 (1987). "An agency which has authority to enact regulations is vested with a large measure of discretion CT Page 12072 and the burden of showing that an agency has acted improperly rests upon the one who asserts it . . . and courts are warranted in assuming that a reasonable and rational result was intended and must construe such regulations accordingly . . . The burden of proving unconstitutionality is upon the plaintiff." (Citations omitted.) Page v. Welfare Commissioner, 170 Conn. 258,263 (1976).
Since the department acted precisely in accordance with validly enacted regulations, its actions cannot be deemed unreasonable, arbitrary, illegal or in abuse of its discretion unless the regulations are invalid. As indicated in the cases cited above, the plaintiff has the heavy burden of rebutting the presumption of validity. The court concludes that she has not met that burden.
First, the plaintiff cites no authority to support her general claim that a report of an investigation by one administrative agency, in this case DCYS, may not serve as the basis of action by another. More to the point, such interaction between DCYS and the department of human resources serves an obvious rational purpose, the protection of children for whom both agencies have responsibility.
The only potential weakness in the regulatory scheme is the possible unreliability of a DCYS report in a given case. That potential problem was exhaustively explored in the present case. The hearing officer found the DCYS witnesses to be credible. She found, on the other hand, that the plaintiff and her witnesses were less believable. General Statutes § 4-183(f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. "A court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations and internal quotation marks omitted). Briggsv. State Employees Retirement Commission, 210 Conn. 214,217 (1989).
Based on all of the considerations set forth above, the court holds that the department was justified under the law and its regulations in revoking the plaintiff's CT Page 12073 registration on the basis that there was a DCYS report indicating instances of abuse in the plaintiff's family home day care home.
The department's hearing officer made the separate finding of fact that the abuse reported by the DCYS case worker, Katin, and the police officer, Harss, had in fact occurred. As a result of this finding, the department determined that the plaintiff had violated another regulation, § 17-31q-19(h)(2) and (3). The plaintiff objects here on the basis that the evidence was insufficient to support the hearing officer's factual finding. The underlying basis of the plaintiff's argument, again, is that the testimony of Katin and Harss, was inadmissible because hearsay.
The court has held that the testimony of Katin and Harss was admissible to prove the existence and contents of the DCYS report. For the same reasons, the testimony was admissible to prove the truth of those witnesses' statements. Furthermore, the fact that the children themselves and their parents were available to the plaintiff as witnesses is extremely significant. The same circumstance was held to be an important factor in the admissibility of hearsay statements in Cassella v. CivilService Commission, supra 4 Conn. App. at 364-365; and in the cases cited therein as precedent, Richardson v.Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed. 842
(1971); and Carlson v. Kozlowski, 172 Conn. 263 (1977).
Having correctly determined to admit the testimony of Katin and Harss, the hearing officer was entitled to accept that testimony and accord it greater weight than the testimony of the plaintiff and her witnesses. General Statutes § 4-183(f). Briggs v. State Employees RetirementCommission supra, 210 Conn. at 217. The evidence was, therefore, sufficient to support the hearing officer's finding that the described abuse had in fact occurred even though the plaintiff presented conflicting evidence.
The plaintiff's remaining claim on appeal is that the department failed to provide her adequate notice of the proceedings. The law concerning the adequacy of notice of charges under the Uniform Administrative Procedure Act and the due process provisions of the state CT Page 12074 and federal constitutions is clear. Section 4-177 of the UAPA describes the general notice required in all contested cases as follows:
 (a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. (b) The notice shall be in writing and shall include (1) A statement of the time. place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations to be involved; and (4) a short and plain statement of the matters asserted . . . Thereafter, upon application, a more definite and detailed statement shall be furnished.
Section 4-182(c) provides, "No revocation, suspension, annulment or withdrawal of any license is lawful unless prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action . . . ." The "stricter notice requirements [contained in § 4-182(c)] are a function of the more compelling private interest involved" in revocation and suspension proceedings. Levinson v. Board of ChiropracticExaminers, 211 Conn. 508, 534 (1989).
In the present case, the plaintiff challenges the department's notices to her on the basis that they failed to apprise her of the facts or conduct which would warrant suspending her day care registration. The court disagrees.
In its response to the plaintiff's attorney's request for a more definite statement, the department set forth the following as the basis of its intended action:
On September 27, 1991, the Department received verbal and written communication from the Department of Children and Youth Services stating that its staff, jointly with the Manchester Police Department, investigated alleged child abuse at your client's family day care home. The Department of Children and Youth CT Page 12075 Services confirmed emotional abuse, use of physical discipline, and inappropriate supervision by your client of the day care children. It is reported that your client slapped in the face and swatted the buttocks of the day care children in her care. It is reported that intensive arguments occurred between family members while children were in day care at the home of your client. Further, it is reported that your client routinely ordered the day care children outside the home and into the basement to play unsupervised. The report received by the Department was signed by Georgette Katin, Social Worker, David English, Social Work Supervisor, and Ann Killam, Program Supervisor, all being personnel of the Department of Child and Youth Services.
Summarizing the contents of the notice, the department told the plaintiff that it intended to revoke her license on the basis that DCYS reported specific instances of physical and emotional abuse of the children enrolled in the plaintiff's day care home. The notice specified § 17-31q-15(i)(2) of the regulations, quoted earlier, as the basis of its intended action in this regard.
The notice also stated that it proposed to revoke the registration on the separate basis that the plaintiff had in fact abused the children as alleged in the DCYS report. Section 17-31q-19(h)(2) and (3), also cited in the notice, prohibits such abuse, and a violation is obviously sufficient basis for revocation.
In light of the court's holding on the other issues in this case, the court concludes that the notice given the plaintiff of the basis of the department's intended 1 action was adequate under the law
The plaintiff's appeal is dismissed.
MALONEY, J. CT Page 12076