[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These cases are consolidated administrative appeals to the Superior Court by the plaintiff-appellant, George M. Purtill, and the plaintiff-appellants, Brian Davis and Karen Davis, from a decision by the defendant-appellant, the Zoning Board of Appeals of the Town of Glastonbury (hereinafter referred to as the "Board" or "Defendant") granting the application of Mark R. Barron and Stephen C. Barron for a variance from the restrictions imposed by the Glastonbury Zoning Regulations (3.3 and 8.1.C) and for a special exception as provided in said Regulations (8.2.B) The Chairman of the Board, the Barrons and the Glastonbury Town Clerk were named as additional defendants.
A public hearing was held on the Barrons application on June 5, 2000 (ROR 17). Letters in support of the application were received by Keith and Alexis Hook of 56 Surrey Lane, Glastonbury (ROR 5) and the Glastonbury Chamber of Commerce ROR 6). Several persons attended the public hearing speaking in favor of the application. Opposing the application were the applicants, E, M. Moffat of 2169 Main Street, Glastonbury (ROR 7) and 56 owners of property, many of whom were located in the vicinity of the subject property (ROR 9). At a meeting of the Board on June 19, 2000 (ROR 18) the application of the Barrons was approved. On June 22, 2000, the Board notified the Glastonbury Town Clerk CT Page 8817 of its findings on the application (ROR 10).
The plaintiffs claim they are aggrieved by the decision of the Board in that they own land within 100 feet of the land (hereinafter referred to as the "subject property") which is the subject of the decision and they have a specific, personal and legal interest in the subject matter of the Board's decision in that it adversely impacts the use and enjoyment of their property and adversely affects the value. They further claim the Board acted illegally, arbitrarily and in abuse of their discretion.
The defendant filed a return of record and a supplemental return of record. The plaintiffs filed a brief in support of their appeals. A reply brief was filed by the defendant. The court heard oral argument of counsel February 28, 2002 and the record was supplemented with additional exhibits.
The following facts and procedural history are relevant to the issues on appeal. The subject property is located at 2160 Main Street in the Town of Glastonbury and has situated thereon a restaurant known as "Mark's Restaurant" (ROR 1). The operation of the restaurant is non-conforming and the subject property is located in a Residence A Zone (ROR 17 p. 2 lines 1-6) and is within the Historic District. The subject property, prior to the current decision of the Board, has been the subject of a number of zoning matters covering the period of 1967 to 1999 (ROR 16) (SROR 1-4). Until the Barrons filed their present application the Board had consistently rejected previous applications concerning the same or similar requests for variances and special exceptions.
The plaintiffs are statutorily aggrieved since based on the uncontroverted testimony they own property within 100 feet of the subject property.
By Trustee's Deed dated September 17, 1970 (Ex. 1) the subject property was acquired by William L. Monaco and Charles L. Monaco (a member of the Board voting in favor of the decision which led to these appeals). On January 31, 1979, the property was transferred to the defendant, Stephen C. Barron (Ex. 2) and the Monacos took back a mortgage (Ex. 3, Ex. 4) which was released on December 30, 1993. At a public hearing held by the Board on June 5, 2000, Charles Monaco disqualified himself on another application pending before the Board on the basis that "(I) sold them their property" (Ex. 13). In their complaints the plaintiffs claim that Charles Monaco should have disqualified himself from hearing and acting upon the Barrons application. His participation became crucial in that had he disqualified himself the Barrons would have needed 4 affirmative votes (Ex. 13) whereas the vote would have been 3 to 1 (Ex. 12) and the application would have failed. CT Page 8818
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Department ofHealth Services, 220 Conn. 86, 94 (1991). Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of PublicUtility Control, 219 Conn. 51, 57-58 (1991). Similarly, "(w)ith regard to questions of fact, it is (not) the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v.Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980)
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166
through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedom of Information Commission,208 Conn. 442, 452 (1988)
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions from those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v. Administrator, UnemploymentCompensation Act, 209 Conn. 381, 385 (1988). CT Page 8819
The familiar principles of administrative law summarized above present a formidable obstacle to the overturning by the court of an administrative agency's factual findings. Nevertheless, if the record does not contain sufficient substantial evidence to support those findings, the court must reject them. Dolgner v. Alander, 237 Conn. 272
(1996).
"A claim that an administrative agency has acted beyond its statutory authority or jurisdiction properly may be the subject of an administrative appeal. Where there is in place a mechanism for adequate judicial review, such as that contained in 4-183, [j] is [the] general rule that an administrative agency may and must determine whether it has jurisdiction in a particular situation. When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act — that is, to determine the coverage of the statute — and this question need not, and in fact cannot, be initially decided by a court." GreaterBridgeport Transit District v. Local Union 1336, 211 Conn. 436, 439
(1989) (Citations and internal quotation marks omitted).
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183. . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule. . . . In determining whether an administrative finding is supported by `substantial evidence', a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part (Citations and internal quotation marks omitted) Briggs v. State Employees Retirement Commission, 210 Conn. 214,217 (1989). "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. Building Wrecking Co. v.Carrothers, 218 Conn. 580, 601 (1991).
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. In reviewing an . . . agency decision made pursuant to the (Uniform Administrative Procedure Act), the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, CT Page 8820 however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonable inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Newtown vs. Keeney,234 Conn. 312, 319-320 (1995), quoting Samperi v. Inlands WetlandsAgency, 226 Conn. 579, 587-588 (1993)
"(V)alidly enacted regulations of an administrative agency carry the force of statutory law." Griffin Hospital v. Commission on Hospitals andHealth Care, 200 Conn. 489, 497 (1986). The DIM policy manual is the equivalent of a state regulation and, as such, carries the force of law. General Statutes § 17-3f (c); Richards v. Commissioner, 214 Conn. 601
(1990). "[V]alidly enacted regulations of an administrative agency carry the force of statutory law." Griffin Hospital v. Commission on Hospitalsand Health Care, 200 Conn. 489, 497 (1986). "Regulations promulgated by an agency having authority to do so are presumed valid." Phelps DodgeCopper Products, Inc. v. Groppo, 204 Conn. 122, 134 (1987). "An agency which has authority to enact regulations is vested with a large measure of discretion and the burden of showing that an agency has acted improperly rests upon the one who asserts it . . . and courts are warranted in assuming that a reasonable and rational result was intended and must construe such regulations accordingly. . . . The burden of proving unconstitutionality is upon the plaintiff." (Citations omitted.)Page v. Welfare Commissioner, 170 Conn. 258, 263 (1976).
"Although the construction and interpretation of a statute is a question of laws for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v.CT Page 8821Commissioner of Environmental Protection, 226 Conn. 358, 372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v.Commission on Hospitals and Health Care, 200 Conn. 489, 497 (1986). It is undisputed that the Waterbury Retirement Board is responsible for enforcing the statutes and regulations in question. This court is required, therefore, to accord great deference to the interpretation of those statutes and regulations given by the Waterbury Retirement Board. This does not mean that the court can abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner, supra 376.
Where, on the other hand, the court determines that an agency's interpretation of a statute is not plausible or reasonable, the court should not defer to such interpretation. Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 109-110.
The court has reviewed the return of Record, Supplemental Return of Record, briefs, testimony and arguments of counsel and finds that the Board did act unreasonably, arbitrarily, illegally or in abuse of its discretion and sustains the appeals.
Since 1926 the subject property has been used for restaurant purposes e.g. ice cream parlor, hotdog stand and take out pizza. After his brother Stephen acquired the property Mark Barron and his wife opened Mark's Restaurant in 1981 and went from a "short-order" style restaurant to homemade food and baked goods. They operated their restaurant for a period of time and subsequently left. They thereafter returned and the current application ensued. The Barrons owned and/or operated the property with the knowledge that it was non-conforming whereas all of the other business and commercial uses in the Zone are conforming. Historically, the Board took the position that it would not allow the particular subject property to be expanded. However well intended the Board may have been they have granted the ability of the applicants to expand the size of the restaurant by 100% to 200% not only to afford the applicants to conform to health codes but to increase the use. While the renovated restaurant may be more aesthetically pleasing to the eye such is not the basis for undue hardship. With only a modest change the restaurant could be made more user-friendly to its customers as to bathrooms and health code compliance. The court finds there was no undue hardship established by the Barrons.
Further, the court finds that member Charles Monaco had a conflict and should have abstained from participating in and voting on the CT Page 8822 application. He not only participated in the Board's deliberations but also seconded the motion to approve. He did abstain on the Bisi application which was heard the same night as the Barron application as previously referred to.
 ___________________, J. John Caruso