[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This is ad appeal from a denial of the plaintiffs (The RYA Corporation, herinafter "RYA") application (ROR 5) for approval of a six-lot subdivision being a portion of approximately 48 acres +/- of land owned by the plaintiff Myers Nursery, Inc. (hereinafter "Myers"). Myers consented to the filing of the application (ROR 4). The entire parcel of land owned by Myers, including the proposed six-lot subdivision is situated in the Town of Enfield and is on the westerly side of Laughlin Road which runs in a generally north-south direction. RYA has designated the six-lot subdivision as "Cherry Wood Court" and intends on subdividing the remainder of the Myers property at a future date. According to the Enfield Zoning Regulations all of the Myers property is within a residential district R44 which allows for single family dwellings to be constructed on lots of at least one acre (ROR 64). The six lots in question all have the requisite frontage on Laughlin Road and range in size from slightly over one acre to approximately one and one-half acre. Each lot would have a septic system and well.
Following the filing of the appeal the following defendants were granted intervenor status pursuant to Conn. Gen. Statutes Sec. 22a-19: James Sperry, Sharon Torrant, Marcia and Nathaniel Lyman and Susan Schreffler.
The complaint was filed with the clerks' office on February 9, 2001. The defendant Planning And Zoning Commission Town of Enfield (hereinafter "Commission") "filed the Return of Record on April 4, 2001. The Commission answered the complaint on April 4, 2001. On June 18, 2001 the intervenors filed an answer and special defenses to which the plaintiffs responded on June 20, 2001. The Commission supplemented the record on July 11, 2001 and thereafter briefs were filed. The court heard oral argument of May 10, 2002 and August 19, 2002.
At the May 10, 2002 hearing the Commission and the Intervenors filed CT Page 1397 Motions to Dismiss the appeal claiming RYA was neither statutorily or classically aggrieved. The issue was extensively briefed. The court denies the motions.
The following facts and procedural history are relevant to the issues on appeal. Following the filing of the application counsel for RYA had a preliminary meeting with the Enfield Administrative Review Team on January 26, 2000 (ROR 1). The roadbed of Laughlin Road is currently unpaved and unimproved. Safety issues concerning access by emergency vehicles was a substantial concern. The record and photographs leave little doubt of the poor condition of the road. Two vehicles cannot pass at the same time. The right of way has CLP poles in the roadbed and on the easterly side are large ancient trees.
As the application wound its way through the process the Commission received a number of comments from interested agencies. The North Central District Health Department indicated that the soil conditions for the proposed lots are well drained and the proposed areas of the septic systems appear satisfactory (ROR 2). However, water tests would be required (they were subsequently done and proved satisfactory). None of the Myers property had wetlands or watercourses (ROR 3). The proposed subdivision was also referred to the Capitol Region Council of Government for comment since the subject parcel was within 500' of the Ellington Town Line (ROR 9, 10). Their only concerns were for the preservation of farmland and open space (ROR 22). The Town of Enfield Water Pollution Control had no comments (ROR 11). Comments were solicited from the Board of Education (ROR 14). Their response primarily concerned sidewalks and childrens safety (ROR 15). School bus service would not be possible (ROR 21). The Administrative Review Team again met on August 30 2000 and addressed a number of issues again expressing concerns about the condition of Laughlin Road (ROR 16, 17.18). Similar concerns were raised by staff (ROR 24, 25) and the Town of Ellington and the impact on their Griswold Road (the continuation of Laughlin Road as it enters Ellington) (ROR 26). The Hazardville Fire District claimed that the width and condition of Laughlin Road was inadequate and unsatisfactory for emergency vehicles (ROR 52).
Numerous continuances of the public hearing were required pending the opinion from the Enfield Town Attorney on several issues. On various dates counsel for the applicant and counsel for the intervenors made extensive presentations to the commission (ROR 59). The decision by the Commission was deferred until January 18, 2001 to enable the Town Attorney to address some of the concerns of the Commission. On that date a motion to approve the subdivision with conditions was moved and seconded. It was defeated unanimously. This appeal followed. CT Page 1398
The court will first address the concerns of the intervenors. They correctly claim that the so-called ancient trees are within the purview of Conn. Gen. Statutes § 22a-19. However, none of these trees are on or immediately adjacent to the Myers property. Further, they suggest that Laughlin Road be designated a "Scenic Road" which would allow the Town of Enfield to leave the road in pretty much its present state. Such designation would require approval of the Enfield Town Council and the vote of the majority of the property owners affected. Neither of these concerns are relevant to the court's decision on this appeal.
Following the close of the public hearing the Commission received an opinion from the Enfield Town Attorney dated January 3, 2001 (ROR 54) in which he opined that Laughlin Road was an accepted town road and the applicant did not have to widen Laughlin Road.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Department ofHealth Services, 220 Conn. 86, 94 (1991). Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of PublicUtility Control, 219 Conn. 51, 57-58 (1991). Similarly, "(w)ith regard to questions of fact, it is (not) the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v.Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166
through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute CT Page 1399 its own judgment for that of the [administrative agency]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedom of Information Commission,208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own. conclusions from those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v. Administrator. UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
The familiar principles of administrative law summarized above present a formidable obstacle to the overturning by the court of an administrative agency's factual findings. Nevertheless, if the record does not contain sufficient substantial evidence to support those findings, the court must reject them. Dolgner v. Alander, 237 Conn. 272
(1996).
"A claim that an administrative agency has acted beyond its statutory authority or jurisdiction properly may be the subject of an administrative appeal. . . . Where there is in place a mechanism for adequate judicial review, such as that contained in 4-183, "[i]t is [the] general rule that an administrative agency may and must determine whether it has jurisdiction in a particular situation. When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act — that is, to determine the coverage of the statute — and this question need not, and in fact cannot, be initially decided by a court." GreaterBridgeport Transit District v. Local Union 1336, 211 Conn. 436, 439
(1989) (Citations and internal quotation marks omitted).
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183. . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule. . . . In determining whether an administrative finding is supported by `substantial evidence', a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an CT Page 1400 expert, in whole or in part (Citations and internal quotation marks omitted). Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989). "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld."Conn. Building Wrecking Co. v. Carrothers,218 Conn. 580, 601 (1991).
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. In reviewing an . . . agency decision made pursuant to the (Uniform Administrative Procedure Act), the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonable inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Newtown v. Keeneve, 234 Conn. 312,319-320 (1995), quoting Samperi v. Inlands Wetlands Agency,226 Conn. 579, 5 87-588 (1993).
"(V)alidly enacted regulations of an administrative agency carry the force of statutory law." Griffin Hospital v. Commission on Hospitals andHealth Care, 200 Conn. 489, 497 (1986). The DIM policy manual is the CT Page 1401 equivalent of a state regulation and, as such, carries the force of law. General Statutes § 17-3f (c); Richards v. Commissioner, 214 Conn. 601
(1990). "[V]alidly enacted regulations of an administrative agency carry the force of statutory law." Griffin Hospital v. Commission on Hospitalsand Health Care, 200 Conn. 489, 497 (1986). "Regulations promulgated by an agency having authority to do so are presumed valid." Phelps DodgeCopper Products, Inc. v. Groppo, 204 Conn. 122, 134 (1987). "An agency which has authority to enact regulations is vested with a large measure of discretion and the burden of showing that an agency has acted improperly rests upon the one who asserts it . . . and courts are warranted in assuming that a reasonable and rational result was intended and must construe such regulations accordingly. . . . The burden of proving unconstitutionality is upon the plaintiff." (Citations omitted.) Page v.Welfare Commissioner, 170 Conn. 258, 263 (1976).
"Although the construction and interpretation of a statute is a question of laws for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v.Commissioner of Environmental Protection, 226 Conn. 358, 372 (1993). "This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations." Griffin Hospital v.Commission on Hospitals and Health Care, 200 Conn. 489, 497 (1986). It is undisputed that the Waterbury Retirement Board is responsible for enforcing the statutes and regulations in question. This court is required, therefore, to accord great deference to the interpretation of those statutes and regulations given by the Waterbury Retirement Board. This does not mean that the court can abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner, supra 376.
Where, on the other hand, the court determines that an agency's interpretation of a statute is not plausible or reasonable, the court should not defer to such interpretation. Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 109-110.
The court has reviewed the return of Record, Supplemental Return of Record, briefs and arguments of counsel and finds that the Commission did act unreasonably, arbitrarily and or in abuse of its discretion and sustains the appeal. However, the court does so with great reluctance. The concerns of the Commission and other agencies involved in the decision-making process concerning the condition of Laughlin Road are real and substantial. If RYA proceeds with the six-lot and subsequent CT Page 1402 additional subdivision without their being improvements to the road lives might be put in jeopardy. The record fails to disclose any basis for the Commissions decision other than the condition of Laughlin Road. However, the applicant should not be put into a position of not being able to subdivide its property. The property is properly zoned and the requisite frontage is available. Further, the Town of Enfield allowed and permitted the construction of two residences by the intervenors across the roadway from the subject property upon receipt from the property owners of waivers of future requests to improve Laughlin Road.
Since the applicant will be required to designate some of the land as open space or make a payment in lieu thereof the parties might wish to consider the moving of Laughlin Road to the west onto the land of Myers and whatever land Myers loses can be considered as its payment in lieu of in order to save the ancient trees.
BY THE COURT,
___________________, J. John R. Caruso CT Page 1403